236 P.2d 77

**SAWYER v. BARTON.**
**No. 5277.**

Supreme Court of New Mexico.
Sept. 8, 1951.

Rehearing Denied Oct. 15, 1951.

Harvey, Dow & Hinkle, Roswell, for appellant.

G. T. Hanners, Hanners & Ward, Lovington, for appellee.

SADLER, Justice.

The question involved on this appeal is whether the appellee, who was plaintiff below, purchased a mineral interest in certain land in Lea County, New Mexico, charged with notice that the defendant-appellant was owner of such interest by virtue of an unrecorded deed in the latter's chain of title, admittedly good, if plaintiff had notice of the deed mentioned.

The interest in controversy is an undivided three-sixteenths in the oil and gas and all other minerals in and under the Northeast quarter (NE¼) of Section 23, Township 29 South, Range 36 East, containing 160 acres, more or less. This quarter section along with another quarter section was conveyed by patent from the United States to the Heirs of Harvey Almont Britton on October 8, 1923. He was a son of Jim A. Britton and Mary E. Britton and died, intestate and unmarried, prior to patent after entering this land as a homestead. Accordingly, as found by the trial court, the father and mother as sole heirs of the deceased son acquired the land by inheritance as tenants in common; in reality by donation or purchase rather than inheritance. Martyn v. Olson, 28 N.D. 317, 148 N.W. 834, L.R.A.1915B, 681.

Following their acquisition of title and on June 5, 1928, Jim A. Britton and Mary E. Britton conveyed an undivided one-half interest in the minerals in both quarter sections to third parties. Thereafter, Jim A. Britton died intestate. Mary E. Britton, his widow, thus inherited one-fourth of his remaining undivided one-fourth mineral interest and one-fourth of his undivided one-half surface interest. She thus became owner of an undivided five-eighths interest in the surface and an undivided five-sixteenths interest in the minerals, the three children of the marriage between her and Jim A. Britton inheriting the remaining undivided three-eighths surface interest and the remaining undivided three-sixteenths mineral interest.

On July 11, 1936, Mary E. Britton conveyed an undivided one-fourth mineral interest in both quarter sections to one E.

L. Hanson, who reconveyed the same on July 14, 1936, to the defendant, Roy G. Barton, both such mineral deeds being recorded on August 4, 1936. Prior to the recording of such mineral deeds and by another deed acknowledged July 18, 1936, bearing date July 17, 1936, Mary E. Britton conveyed to Roy G. Barton an undivided one-fourth mineral interest in the quarter section involved in this suit. This mineral deed was also recorded on August 4, 1936, along with the two deeds just mentioned. The mineral deeds out of the Brittons listed hereinabove, the one executed by Jim A. Britton and Mary E. Britton, his wife, conveying to third parties an undivided one-half interest in the minerals, the second to one E. L. Hanson dated July 11, 1936, executed by Mary E. Britton following the death of her husband conveying an undivided one-fourth interest in the minerals and the one above described by Mary E. Britton to defendant, Roy G. Barton, bearing date July 17 and acknowledged the following day, July 18, 1936, conveying an undivided one-fourth interest in the minerals to the defendant, Roy G. Barton, represent conveyances by the Brittons of the entire mineral interest in the land involved.

However, just prior to the last mentioned conveyance, Mary E. Britton did not own an undivided one-fourth interest in the minerals. Her interest remaining after previous conveyances was that inherited from her husband, namely, an undivided one-sixteenth interest, the remaining undivided three-sixteenths interest being owned by the three children of Jim A. Britton and Mary E. Britton, namely, James McKinley Britton, Dora Anna Miller and Zula Annette Hinkle. Accordingly, in connection with the sale of this outstanding undivided one-fourth mineral interest, and in order to place herself in a position to convey the quantity of interest being sold, Mary E. Britton took from her three children a quitclaim deed to herself dated July 18, 1936, conveying all interest in this and other lands. This she furnished to the defendant, Barton, along with her warranty deed to the undivided one-fourth mineral interest. The two deeds, the one from Mary E. Britton to Roy G. Barton with the quitclaim deed pinned to it, and a draft for the sale price attached, were delivered to the defendant through a Clovis bank upon payment by defendant of the amount of the draft. The deed from Mary E. Britton to defendant, as already stated, was recorded on August 4, 1936. The quitclaim deed from the children to their mother was not recorded until May 21, 1948, nearly twelve years later.

On October 31, 1940, more than four years after her deed to defendant of the undivided three-sixteenths mineral interest in question had been recorded, Mary E. Britton joined by her three children ex-

ecuted a deed in favor of U. D. Sawyer, the plaintiff, conveying or purporting to convey, among other property, an undivided three-sixteenths interest in the minerals in and under the land in question. Obviously, if Mrs. Britton's deed to Barton purporting to convey an undivided one-fourth interest in the minerals was effective, then the conveyance to plaintiff, Sawyer, insofar as it purported to convey an undivided three-sixteenths mineral interest in the same land, was ineffective. That interest had already been conveyed to Barton. But the plaintiff, Sawyer, claims and the trial court found, that he was not to be charged with notice of the unrecorded quitclaim deed which Mrs. Britton secured from her children and furnished Barton along with her own deed; that the recording of the deed from Mrs. Britton to Barton, although on its face consuming in quantity the entire outstanding mineral interest remaining in Mrs. Britton and her children, was not sufficient to put plaintiff on notice and impose the duty of inquiry.

The record discloses that the plaintiff began negotiating for the purchase of this property almost two whole years before actually accepting title. In the course of the negotiations abstracts were furnished for examination to his attorney who rendered to plaintiff a written opinion on the title under date of December 6, 1938. In this opinion he recommended a suit to quiet title because of a want of probate proceedings upon the estates of Harvey Almont Britton and Jim A. Britton, both of whom had died intestate. Attention of plaintiff was also called in the title opinion to the deed from Mrs. Britton to defendant, mentioned as a cloud on the title, with a recommendation that Barton be made a party defendant to the suit to quiet title, in the following language, to wit: "(3) At page 58 of the abstract is shown a mineral deed, by the terms of which Mary E. Britton, a widow, attempted to convey to Roy G. Barton an undivided one/fourth interest in the minerals in and under the Northeast Quarter of Section 23 of the lands abstracted. This deed was dated July 17, 1936, and prior thereto Mary E. Britton had already conveyed, to Roy G. Barton and others, an undivided one/half of the minerals in this particular quarter section. Consequently, at the date of the execution of the last mineral deed to Roy G. Barton, Mary E. Britton owned only an undivided $\frac{1}{16}$th interest in the minerals, although she attempted to convey an undivided one/fourth. *This deed now constitutes a cloud on the title, in so far as the other $\frac{3}{16}$ths interest is concerned, and Roy G. Barton should, therefore, be made a party defendant in the above required suit to quiet title.*" (Emphasis added.)

The excuse offered by plaintiff for failure to inquire of defendant, Barton, for an explanation of his mineral deed from Mrs. Britton to an undivided one-fourth mineral

interest in the land in question is somewhat involved. It will be recalled that the first opinion on this title from which a paragraph taking notice of the Barton deed is quoted, supra, was dated December 6, 1938. The opinion was addressed to the plaintiff and copies thereof were furnished both to Mrs. Mary E. Britton and to her daughter, Mrs. W. B. Harrell, residing in Roswell. The opinion indicated confusion in the attorney's mind as to how the undivided one-half mineral interest conveyed by Jim A. Britton and Mary E. Britton, his wife, on June 5, 1928, to third parties was made up. Did the wife join as a mere formality, thereby allocating the entire one-half interest conveyed from the husband's mineral ownership? Or, the mineral interest being the separate property of each spouse, was it the intention of the grantors that the undivided one-half mineral interest conveyed should be made up by contribution of an undivided one-fourth interest from the share of each spouse? In his opinion, the attorney refers to the use in the deed of the personal pronoun "I", followed by names of grantors, described as husband and wife, and the use of the personal pronoun "their" at certain other places in the body of the deed and in the acknowledgment, as contributing to, if not actually creating, the doubt expressed.

The opinion finally correctly concludes, however, as the trial court found and as the parties unquestionably intended, that the undivided one-half interest conveyed was made up by contribution of an equal portion, namely an undivided one-fourth interest, from the mineral ownership of each spouse. Yet, notwithstanding this ultimate conclusion by the examining attorney as to interests conveyed by the June 5, 1928 deed, of which Mrs. Britton had been informed in the copy of title opinion sent her by him, he was impressed that the oath she took to the complaint he sent her for verification and use in the proposed quieting title suit, which contained allegations of ownership by her and the children of specified undivided mineral interests in the land, was true, thus fortifying an assumption that her deed to Barton, of which she, the attorney and the plaintiff had actual knowledge as well as constructive notice, was nothing more than a case of "overconveyance." The attorney himself so explained the deed to his own satisfaction, all as shown by the trial court's findings Nos. 3 and 4 reading as follows:

"3. That such abstracts showed that the 1928 mineral deed from Jim A. Britton and Mary E. Britton covering an undivided one-half mineral interest, referred to in finding No. 1, was susceptible of two different reasonable constructions as to whether the one-half interest conveyed thereby had come solely out of the interest of Jim A. Britton or whether the same had come equally out of the interests of Jim A. Britton and Mary E. Britton; and that by

the title opinion and letter of the plaintiff's attorney of December 6, 1938, Mary E. Britton was advised that by the more reasonable of the two possible constructions of such 1928 mineral deed, she had in fact conveyed an undivided one-fourth mineral interest by such 1928 mineral deed to the defendant Roy G. Barton on July 17, 1936, purporting to convey one-fourth mineral interest, she had then owned only an undivided one-sixteenth mineral interest; and that such mineral deed had been an overconveyance to the extent of three-sixteenths, and that such three-sixteenths mineral interest was owned by the three Britton children.

"4. That during the exchange of correspondence, mailing of title opinions, mailing and execution of deeds, signing, verification and mailing of complaint which passed between the plaintiff's attorney and the Britton people, commencing December 6, 1938, and concluding December 5, 1940, Mary E. Britton and her three children assented to the construction which had been placed upon the 1928 mineral deed and the conclusions reached by the examining attorney relative to the over-conveyance mineral deed of July 17, 1936. During that period of time, the Brittons acquiesced in the conclusion that the three Britton children were the owners of an undivided three eighths surface interest and an undivided three sixteenths mineral interest in both quarter sections. Said Brittons also concurred in the conclusion that Mary E. Britton was the owner of an undivided five-eighths surface interest in the quarter section involved herein together with a small mineral interest in the other quarter section. During this time, Mary E. Britton and Zula A. Hinkle, her daughter, were acting as and for the other two Britton children and for themselves with authority from said children so to act."

The facts found in the two preceding findings of fact explain the theory on which the trial court was able to absolve plaintiff of any duty to inquire of Barton or Mrs. Britton how it came about that she gave him a deed purporting to convey an undivided three-sixteenths mineral interest in excess of what the records indicated she owned and to find, as well, that the plaintiff had neither knowledge nor actual notice of the outstanding unrecorded quitclaim deed. The court concluded from the findings made that the plaintiff had made all inquiries which were reasonably necessary under the facts and circumstances of the case; also that he was an innocent purchaser in good faith, for value, and without notice of the outstanding unrecorded quitclaim deed. A decree in plaintiff's favor quieting his title against defendant to the mineral interest in question followed as a matter of course, occasioning this appeal.

Before beginning a discussion of the legal questions argued by opposing counsel,

it should be added as a part of the factual situation that plaintiff's attorney, who represented him in title examinations prior to purchase of the mineral interest involved, upon learning that six years had not elapsed since the death of Jim A. Britton, as he had been informed was the case, abandoned the plan proposed for a quieting title suit. Instead, in a joint proceeding as to decedents Harvey Almont Britton and Jim A. Britton, put through the probate court of Lea County, the heirship of each decedent was determined to be that set forth hereinabove. Thus it is that the complaint, prepared by plaintiff's attorney for use in the proposed suit to quiet title and whose allegations of ownership in the Britton children and herself of specified undivided mineral interests, when verified by Mrs. Britton, played such a part in the assumption by plaintiff and his attorney that the Barton deed was simply a case of "overconveyance," was discarded in favor of the probate court proceeding and never actually filed.

■■ Counsel for the defendant argue this case under four points. Since all reduce themselves to the single question set forth in the opening paragraph of this opinion, namely, whether plaintiff is chargeable with notice of the unrecorded quitclaim deed from the Britton children to their mother, acquired by her immediately prior to her deed to Barton, we do not treat them separately. Thus we are to decide upon the facts found whether the plaintiff should have inquired of Barton, or others, the meaning of the recorded deed from Mrs. Britton to Barton, on its face purporting to convey to him the very property, a mineral interest, which plaintiff was about to purchase. We have no hesitancy in announcing at the outset our conclusion that plaintiff should have inquired and having failed to do so, he is chargeable with notice of all the facts he might have learned, had he inquired, the vital one being the fact of the unrecorded quitclaim deed. In this connection it is to be remembered that knowledge of any material fact possessed by the attorney representing him in this purchase was knowledge of the plaintiff himself.

■ While there may be some confusion in past decisions as to what is the true rule in this jurisdiction on the subject of implied or constructive notice, Cf. Mosley v. Magnolia Petroleum Co., 45 N.M. 230, 114 P.2d 740, the court as presently constituted entertains no doubt on the subject. We think the rule announced and approved in Kitchen v. Schuster, 14 N.M. 164, 89 P. 261, and Taylor v. Hanchett Oil Co., 37 N.M. 606, 27 P.2d 59, is now of too long standing and too thoroughly imbedded in our jurisprudence to be lightly cast aside or overturned. The true rule to be deduced from these decisions is that absent actual notice, where the facts brought to the knowledge of the intending purchas-

er are such that in the exercise of ordinary care he ought to inquire, but does not, and his failure so to do amounts to gross or culpable negligence, he will be charged with a knowledge of all the facts which the inquiry, pursued with reasonable diligence, would have revealed. Want of ordinary care alone will not charge him. The circumstances must be such that the failure to make the inquiry suggested by ordinary care will convict the intending purchaser of gross or culpable negligence if he is to be visited with all the consequences of having made the purchase with actual knowledge of the facts.

A fair analysis of the cases on the subject decided up to that time is to be found in the dissenting opinion of the writer in Mosley v. Magnolia Petroleum Co., supra. It is suggested by defendant's counsel that the later case of Dunne v. Petterman, 52 N.M. 284, 197 P.2d 618, 619, applies the ordinary care rule. We do not think so. Certainly, the obvious appearance of fraud in that case which the purchaser ignored easily convicted him of "gross or culpable" negligence, as disclosed from this language in our opinion, to wit:

"The defendant had actual notice that the purported bill of sale from Mike's Trailer Sales Company to Carlson was fraudulent in that on its very face it plainly showed erasures as well as insertions written in different colored ink and different hand writing.

\*      \*      \*      \*      \*      \*

"We think it sufficiently appears, from the testimony of appellant's own agent and from the bill of sale, that he was not a bona fide purchaser for value without notice. Kitchen v. Schuster, 14 N.M. 164, 89 P. 261; and Taylor v. Hanchett Oil Co., 37 N.M. 606, 27 P.2d 59."

It does not seem likely that we would have cited Kitchen v. Schuster, supra, and Taylor v. Hanchett Oil Co., supra, in support of our opinion if we had sensed or thought we were overruling instead of following them. There was certainly no intention to overrule either on the question under discussion.

The plaintiff cites and relies upon Mabie-Lowrey Hardware Co. v. Ross, 26 N.M. 51, 189 P. 42. Counsel state: "It involved a state of facts as to unrecorded instruments identical with the facts in the case at bar." It did involve an unrecorded quitclaim deed. To that extent and that extent only are the cases identical. The decisive distinction between the cases arises on the fact that there the purchaser was utterly without knowledge or notice of the unrecorded deed, whereas in the case at bar he had notice of a fact which, had it not been ignored or disregarded, would have

brought him unerringly to knowledge that the property he was purchasing was owned by another than his grantors.

So much for the cases mainly relied upon by the respective parties. It is somewhat ironical that defendant, who is winning on this appeal, argues for an application of the ordinary care rule, which we reject, whereas the plaintiff who loses here, supports an application of the so-called federal rule which we approve and reaffirm. However, defendant closes his argument by asserting that regardless of which rule be applied, the plaintiff cannot be characterized as a bona fide purchaser for value because guilty of gross or culpable negligence in taking title in the face of facts known to him, or which easily could have been ascertained by the slightest inquiry. Now for an application of the rule our decisions support to the facts of this case.

The plaintiff leans upon a slender reed, indeed, when he assumes Mrs. Britton's deed to Barton was explainable as an instance of overconveyance due to a misapprehension on her part as to whose interest was being conveyed by the June 5, 1928, deed executed by her and her husband. The mineral interests owned were the separate estate of each spouse. Considering probabilities, the wife might just as well have felt that her interest alone was being conveyed as that it was her husband's. The more natural, indeed, the only logical reason likely to suggest itself to her for joining in the deed would be that she was conveying a share of her separate estate. The trial court's finding No. 3 that the deed of June 5, 1928, by Jim and Mary Britton was susceptible of two separate reasonable constructions as to whether the one-half interest conveyed had come solely from the husband's interest or equally from the interests of the husband and wife cannot be supported on the facts, nor as a simple matter of construing the deed.

Aside from this weakness in the findings, it is quite difficult to understand how plaintiff or his attorney, with actual knowledge of the outstanding Barton deed which on its face conveyed the interest intended for purchase, could negotiate for the property over a period of two years without making the slightest inquiry either of the grantee, Barton, or of Mrs. Britton, or of her children, or some of them, as to the meaning of the Barton deed. The first source of information to suggest itself would be an inquiry of Barton, himself. He resided at Hobbs within twenty miles of where plaintiff's attorney lived and only forty-five miles from the plaintiff's ranch home. Yet not a word of inquiry from plaintiff or on his behalf was made of Barton throughout this entire period. Nor was any direct or specific inquiry ever put to Mrs. Britton, or to any of her children, as to how this deed happened to convey a one-fourth interest, rather than the un-

divided one-sixteenth interest, of which Mrs. Britton was shown to be the record owner.

■ In our opinion the plaintiff was guilty of gross or culpable negligence in failing to make some inquiry regarding this Barton deed. For a period of two years neither he, nor his attorney on his behalf, sought the facts from the source they most likely could have been ascertained. The slightest inquiry of Barton, who was easily accessible, would have brought out the fact that he held the unrecorded quit-claim deed from the Britton children to their mother. Of course, the defendant, Barton, was negligent in not recording this deed for twelve years but under the law he is not to be penalized for this negligence unless the plaintiff is a bona fide purchaser without notice. We have held he is not. In Mosley v. Magnolia Petroleum Co., supra, we said: "It is our understanding that when a prospective purchaser of property has *knowledge* that another claims title thereto under a recorded deed, he is conclusively charged, not only with notice of the contents of the deed, but with notice of 'all the estates, rights, titles and interests created or conferred by it or arising from its provisions,' and he buys at his peril, 2 Pom.Eq.Jur., 4th Ed., Sec. 655. It is more than notice; it is knowledge of the fact of a claim of title, and he takes subject to the legal effect of such deed, notwithstanding he 'weighed the probabilities' of ownership and therefrom came to the decision that the title was in another than the real owner. Such a doctrine would destroy the intended effect of the recording acts. [45 N.Mex. 230, 114 P.2d 758.]"

It is specious argument to suggest that defendant could not say which of numerous holders of fractional mineral interests under Mrs. Britton through various subsequent conveyances and assignments might be the owner of the missing undivided three-sixteenths interest here involved, or some portion thereof. Must defendant contact each of these many holders of mineral interests in an effort to locate the supposed "overconveyance," it is asked? The answer is, no. Indeed, the question answers itself. Up to the time of her conveyance directly to Barton there was no overconveyance by Mrs. Britton, fancied or real, on or off the record. It was the Barton deed and it, alone, which first showed her short of record in the quantity of interest conveyed. The first title opinion of plaintiff's attorney dated December 6, 1938, mentioned it as probably a case of "overconveyance." Then why not *first* inquire of the grantee whose recorded deed *first* suggested an overconveyance? It is plaintiff's inability to furnish a satisfactory answer to this inquiry that denies him the character of a bona fide purchaser for value without notice.

It follows from what has been said that the judgment reviewed is erroneous insofar

as it quiets title in the plaintiff to the undivided three-sixteenths mineral interest in the land in question. Accordingly, it will be reversed and the cause remanded with a direction to the district court to set aside its judgment and modify it to the extent of adjudging and decreeing that the plaintiff shall take nothing against the defendant who shall have his costs on the appeal.

It is so ordered.

McGHEE and COORS, JJ., concur.

LUJAN, C. J., and COMPTON, J., dissenting.

COMPTON, Justice (dissenting).

The trial court made the following findings of fact:

1. That at the time the plaintiff began negotiations shortly prior to December 6, 1938, for the purchase of the lands involved in this suit, together with another quarter section in the adjoining Section 14, the abstracts which were then examined by the plaintiff's attorney showed that all of said lands had been acquired by inheritance by Jim A. Britton and Mary E. Britton as tenants in common, each owning an undivided one half interest, upon the death intestate and unmarried of their son Harvey Almont Britton, to whom such lands had been patented; that on June 5, 1938, Jim A. Britton and Mary E. Britton conveyed an undivided one half mineral interest in both quarter sections to third parties; that thereafter and prior to the examination of such abstracts by the plaintiff's attorney, the said Jim A. Britton had died intestate, and that his remaining one fourth mineral interest had been succeeded by Mary E. Britton, widow, in the proportion of one fourth, so as to thereby make her the owner of an undivided five eighths surface interest, and by the three Britton children in the proportion of three fourths, so as to thereby make them the owners of an undivided three eighths surface interest, as tenants in common with the said Mary E. Britton.

2. That such abstracts also showed that on July 11, 1936, Mary E. Britton conveyed an undivided one fourth mineral interest in both quarter sections to E. L. Hanson, who reconveyed the same on July 14, 1936, to the defendant Roy G. Barton, with both of such mineral deeds being recorded on August 4, 1936; that on July 17, 1936, the said Mary E. Britton made another mineral deed purporting to convey an undivided one fourth mineral interest in the land involved in this suit to the defendant Roy G. Barton, which mineral deed was also recorded on August 4, 1936, and which said last mentioned mineral deed was then shown by said abstracts to be an over conveyance of mineral interest to the extent of three sixteenths more than the said Mary E. Britton then owned.

5. That on July 18, 1936, the three children made a quitclaim deed to their

mother, Mary E. Britton, covering their entire surface and mineral interest in both quarter sections; and that such quitclaim deed had been delivered to the defendant Roy G. Barton on or shortly after that date, but that such quitclaim deed was not placed of record until 12 years later on May 21, 1948.

6. That neither the plaintiff nor his examining attorney had any knowledge of or information about such outstanding unrecorded quitclaim deed at the time he began negotiations for the purchase of such lands on December 6, 1938, or at the time he completed such transaction on December 5, 1940, nor at any time during the two year course of such negotiations; nor was any mention or intimation ever made by Mrs. Britton or any of the Britton children of such outstanding unrecorded quitclaim deed.

7. Plaintiff had no knowledge or actual notice of the outstanding unrecorded quitclaim deed.

8. That plaintiff through his contact with Mary E. Britton and Zula A. Hinkle representing the other two Britton children reasonably relied upon their assent to the conclusion that the three children were the owners of the three eighths surface interest and three sixteenths mineral interest and whether or not Mary E. Britton was the owner of the five eighths surface interest which they and she proposed to convey.

9. That plaintiff was not negligent in failing to obtain knowledge of the outstanding unrecorded quitclaim deed in view of the record title and the representations of Mary E. Britton and the Britton children as appeared in the abstract and from conversation with Mary E. Britton and Zula Hinkle.

The court then concluded:

1. That the plaintiff exercised due diligence in connection with his examination of said title, acceptance of his deed and completion of his purchase of the surface and mineral interests involved in this suit.

2. That the plaintiff was not negligent in connection with examination of said title, acceptance of his deed and completion of his purchase of the surface and mineral interests involved in this suit.

3. That the plaintiff made all inquiries which were reasonably necessary under the facts and circumstances of this case.

4. That the plaintiff was an innocent purchaser in good faith, for value, and without notice of such outstanding unrecorded quitclaim deed.

5. That the plaintiff is the owner in fee simple of the surface and mineral interests involved in this suit, and that he is entitled to a decree quieting title in him.

The majority says that the deed dated July 17, 1936, in which Mary E. Britton conveyed an undivided one fourth mineral interest put appellee on notice of the unrecorded quitclaim deed from the three children to their mother, Mary E. Britton.

On the other hand, appellee insists that said deed was merely an over conveyance and that he is a bona fide purchaser for value and without notice.

The evidence discloses that when appellee's attorney first examined the abstract of title December 6, 1938, it showed that the three children of Mary E. Britton were the owners of three sixteenths mineral interest and so advised the mother, Mary E. Britton. He also advised Mrs. Britton that after the death of Mr. Britton that she was owner of five sixteenths mineral interest and that after she conveyed an undivided one fourth mineral interest to Hanson she then had one sixteenth mineral interest left. He explained to her further that when she conveyed a one fourth mineral interest on July 18, 1936, to Barton that there appeared to be an over conveyance of her mineral interest. And, on account of what was considered to be an over conveyance, Mrs. Britton employed the services of an attorney, Mr. G. T. Hanners, Esq., of the Lovington bar, to institute suit to quiet title. She verified a quiet title complaint but the suit was not filed because it was then discovered that Harvey Almont Britton had not been dead the required statutory time. Instead, about two years later, Mrs. Britton instituted suit for a determination of the heirs of the deceased son under the provisions of Chap. 187, Laws of 1939. The fact that Mrs. Britton had signed the complaint under oath, stating that she was the owner of an undivided five eighths surface interest and that her children were the owners of the remaining surface interest and an undivided three sixteenths mineral interest, and the record so showing, the finding that appellee was not negligent in failing to obtain knowledge of the unrecorded quitclaim deed finds support in the evidence.

The majority further says that appellee was negligent in failing to contact appellant directly with respect to his interest. I do not think so. There is not the slightest suggestion in the chain of title that the Britton children did not own the remaining three sixteenths mineral interest, nor does the majority point to testimony tending to contradict such fact. Moreover, there were many owners of mineral interests in the land, possibly fifty. If the majority is correct, then appellee was equally bound to contact the various owners with respect to their interests as they were similarly affected. Clearly, no such burden was imposed upon him by the record.

The quitclaim deed from the Britton children to their mother was delivered to appellant at the same time he received the deed from Mary E. Britton conveying the one fourth mineral interest, the "over conveyance." Manifestly, he was negligent in failing to record it, resulting in the involvement of a bona fide purchaser. I believe our recording statutes, Sections 13–201, 202, 203, 1941 Comp., fully answers appellant's contention.

"13–201. Recording deeds, mortgages, and patents.—All deeds, mortgages, United States patents and other writings affecting the title to real estate, shall be recorded in the office of the county clerk of the county or counties in which the real estate affected thereby is situated.

"13–202. Constructive notice of contents.—Such records shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording.

"13–203. Unrecorded instruments—Effect.—No deed, mortgage or other instrument in writing, not recorded in accordance with section 4786 (§ 13–201), shall affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith, or judgment lien creditor, without knowledge of the existence of such unrecorded instruments."

The question of constructive notice was before us in the case of Kitchen v. Schuster, 14 N.M. 164, 89 P. 261, 265. The case involves a failure to record a chattel mortgage and we applied the Federal Rule on constructive notice. In this case, we said: "* * * The testimony for the plaintiff, it is claimed by him, tends to show that Schuster had both actual and constructive notice of the mortgage. The defendant denies that it shows either. The proper rule governing constructive notice is in our judgment stated in United States v. Detroit [Timber & Lumber] Co., 200 U.S. 321, 323, 26 S.Ct. 282, 285, 50 L.Ed. 499, where it is said: 'When a person has not actual notice he ought not to be treated as if he had notice, unless the circumstances are such as enable the court to say, not only that he might have acquired, but also that he ought to have acquired it, but for his gross negligence in the conduct of the business in question. The question then, when it is sought to affect a purchaser with constructive notice, is not whether he had means of obtaining the knowledge in question, but whether not obtaining was an act of gross or culpable negligence.' "

Again, in Mabie-Lowrey Hardware Co. v. Ross, 26 N.M. 51, 189 P. 42, 43, the question of implied notice was before us. The case involves an unrecorded instrument analogous with the present facts. In that case, one Dock Townsend, conveyed his land by warranty deed to a party by the name of Toole. Toole reconveyed the property to Mabie-Lowrey Hardware Co. The latter deed was promptly recorded but the deed from Townsend to Toole was not recorded until some two years later. Meanwhile, Ross purchased the property from Townsend for value and without knowledge of the existence of the outstanding, unrecorded deed. In holding that Ross was an innocent purchaser for value, and without notice, the court said:

"Both parties claim title to the property in question through conveyances from one Dock Townsend. Plaintiff received its pa-

per title by warranty deed from one Toole, to whom Townsend had conveyed. The deed from Townsend to Toole was not recorded until nearly two years after it was made. The deed from Toole to the plaintiff was promptly recorded. Subsequent to the time Townsend made his deed to Toole, he (Townsend) made a quitclaim deed to the defendant, Tom Ross, which quitclaim deed was recorded prior to the recording of the deed from Townsend to Toole. The court below held that Ross was a purchaser in good faith, without knowledge of the existence of the unrecorded deed, and gave judgment in his favor.

"The plaintiff below, appellant here, assigns as error this action of the trial judge, contending that defendant was not a purchaser in good faith, as he obtained his title by quitclaim deed, and therefore had no interest or title in the land, because Townsend had previously conveyed his interest by an unrecorded deed to Toole, who had conveyed to plaintiff. He further contends that defendant could take only what Townsend had to convey, and that Townsend had at the time nothing to convey. It is admitted that defendant paid value for the property in question, that he had no knowledge of the existence of the outstanding unrecorded deed from his grantor to Toole, and that the records of deeds in the county recorder's office show that the record title was in his grantor, Townsend, at the time he, the defendant, purchased. It is contended, however, because he took a quitclaim deed from Townsend, that he is not a purchaser in good faith under the recording acts; that is, section 4788, Codification of 1915. (Here follows so much of the opinion as relates to the fact that the Ross deed was a quitclaim deed and not a warranty deed—not considered material to the controversy here)

"We therefore hold that the trial judge correctly decided in favor of the defendant, and the judgment below is affirmed; and it is so ordered."

In Taylor v. Hanchett Oil Co., 37 N.M. 606, 27 P.2d 59, we referred to, and reaffirmed the Mabie-Lowrey case. See also, Dunne v. Petterman, 52 N.M. 284, 197 P.2d 618, where the reasonable diligence rule was applied.

It is my opinion that appellee was not charged with notice of the unrecorded deed. The majority having concluded otherwise, I dissent.

LUJAN, C. J., concurs.