651 P.2d 1029

**C. B. & T. COMPANY, a New Mexico partnership, Trustee of the Eugene C. Paine Trust, Plaintiff-Appellee,**

v.

**Aulton W. HEFNER and Frances Hefner, his wife, Defendants-Appellants.**

No. 5537.

Court of Appeals of New Mexico.

Aug. 19, 1982.

Certiorari Denied Sept. 28, 1982.

W. T. Martin, Jr., Martin & Meyer, Michael T. Murphy, Carlsbad, for defendants-appellants.

Joel M. Carson, Losee, Carson & Dickerson, P. A., Artesia, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Plaintiff contracted to sell and defendants contracted to buy certain real and personal property. The contract did not expressly refer to a working interest in a

producing gas well. On the basis that the working interest was conveyed, because not expressly reserved, defendants demanded that plaintiff turn over runs from the well. *See Sachs v. Board of Trustees, etc.,* 89 N.M. 712, 557 P.2d 209 (1976). Plaintiff refused and sued seeking rescission of the contract or alternative relief. Defendants' counterclaim included a claim for conversion; thus, this court's jurisdiction. Section 34–5–8(A), N.M.S.A.1978 (1981 Repl. Pamph.); *Taylor v. McBee,* 78 N.M. 503, 433 P.2d 88 (Ct.App.1967); *Measday v. Sweazea,* 78 N.M. 781, 438 P.2d 525 (Ct.App.1968). The trial court gave defendants 45 days to elect to have the contract reformed to exclude the producing well from the sale or to have the contract rescinded. Defendants refused to make an election; the trial court then granted rescission; defendants appealed. We (1) summarily dispose of certain matters and discuss (2) plaintiff's lack of knowledge concerning the producing well, (3) the fiduciary obligation of a managing partner, and (4) the fiduciary obligation of an attorney representing both parties.

Paine was a silent partner in a partnership with Aulton Hefner (hereinafter Hefner) and Caviness; the partnership was known as the El Rancho Package Store. The assets of this partnership included a liquor license owned by a corporation, in which the partners held the stock, and the El Rancho Building Partnership which owned the building and land where the liquor store was located.

The land was part of a 320-acre proration unit; the producing gas well was located within the proration unit but not located on the land owned by the Building Partnership. The partners owned a working interest in the well; the runs attributable to the El Rancho acreage were distributed to the partners separately, one-third to each. The well was a Cities Service well, sufficiently identified, in this case, as the Tracey "B".

Paine died. His will left his partnership interest in the El Rancho Package Store to a bank, as testamentary trustee. Plaintiff, a partnership, was the bank's nominee to carry out the trust provisions and functioned as the trustee of the Paine Trust.

Hefner was the "Chief Operating Officer" of the El Rancho Package Store. Hefner negotiated with plaintiff, seeking to purchase the Trust's interest in the partnership property. These negotiations resulted in the contract of sale which the trial court rescinded.

The attorney that represented Hefner in connection with the sale was also retained counsel for plaintiff; there is no dispute that the attorney represented both parties to the contract. There is also no dispute that the attorney was a specialist in oil and gas law.

Plaintiff obtained an appraisal of the El Rancho Package Store assets. The purchase price was based on the appraised valuation. The appraisal included the liquor store, the liquor license and the surface land; it did *not* include the gas well or equipment for producing the well.

The attorney prepared the contract. Neither the contract nor the related documents excepted or reserved the minerals; however the documents were "not drawn in such a manner as to evidence that it was the intention of the parties to convey an interest in a producing gas well * * *." At trial, the attorney characterized the contract as unique in that there was no mention of any producing property, the transfer of production equipment, the transfer of runs from the Trust to Hefner or for accounting for runs in the event Hefner should be in default under the contract.

The producing well was drilled in an unorthodox location. It was not readily visible from the El Rancho land and was not situated so that it was apparent that the El Rancho land was part of the proration unit. "The location of the well is such that even to a trained observer looking at the surface the Tracey 'B' Well would not appear to be a part of the proration unit involving the El Rancho Lands."

Hefner's accountant, Crouch, accounted to the Trust for the Trust's interest in the runs. The accountings did not refer either to El Rancho or the Tracey "B". Hefner's

attorney, at trial, admitted that not a single document presented to the trial court "states that Tracey 'B' is from El Rancho property".

The trial court found that at the time the contract of sale was executed plaintiff was not aware "that the El Rancho Lands formed a portion of a proration unit upon which was located a producing gas well." The trial court also found that plaintiff "did not intend that the trust's interest in any producing properties be conveyed to the defendants Hefner." Substantial evidence supports these findings. The trial court concluded that plaintiff's failure to reserve oil, gas and other minerals, together with production equipment which formed a part of the Tracey "B" proration unit, was due to a mistake of fact on the part of plaintiff. We refer to additional findings and conclusions in deciding the substantive issues presented.

In granting rescission, the trial court rejected requested findings that would have granted relief on the basis of mutual mistake. In addition, the trial court did not find fraud or misrepresentation on the part of the attorney. Rescission was granted on the basis that Hefner and the attorney had breached their fiduciary duties. Defendants do not assert that rescission would be an inappropriate remedy for such a breach; they contend that plaintiff was barred from obtaining rescission and that no fiduciary duty was breached.

**Summary Matters**

■ (a) Defendants complain of the trial court's refusal to adopt certain of their requested findings. It is not error to refuse requested findings which are contrary to findings made if the findings made are supported by substantial evidence. *Clem v. Bowman Lumber Company,* 83 N.M. 659, 495 P.2d 1106 (Ct.App.1972). The findings of the trial court are supported by substantial evidence. The substantive issues go to whether the findings are sufficient to support the trial court's legal conclusions. *See Thompson v. H. B. Zachry Co.,* 75 N.M. 715, 410 P.2d 740 (1966). Specifically, the question in each of the substantive issues is the correctness of the legal conclusion.

■ (b) Defendants contend that rescission was improperly based on the conclusion that plaintiff's failure to exclude the minerals and production equipment from the sale was due to a mistake of fact on plaintiff's part. Defendants assert that this mistake of fact was a unilateral mistake, and unilateral mistake was not a basis for rescission. *See Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc.,* 84 N.M. 524, 505 P.2d 867 (Ct.App.1972). The answer is that the trial court did not rescind the contract on the basis of unilateral mistake; it rescinded because of breach of fiduciary duties. The "mistake of fact" conclusion goes only to the findings as to plaintiff's lack of knowledge of a producing well and lack of intent to sell the Trust's interest in the well.

■ (c) Defendants claim that plaintiff is barred from obtaining rescission because plaintiff did not read the contract before signing it. This is not an issue on appeal because it was not raised in the trial court. Rule Civ.App. 11, N.M.S.A.1978. Further, there is substantial evidence that this contract was reviewed, on plaintiff's behalf, by four people.

(d) The trial court concluded that an attorney, in a fiduciary position, has a duty of disclosure, and that duty is not fulfilled unless the disclosure is in writing. Neither party has relied on an "in writing" disclosure requirement in this appeal; we do not decide the attorney's disclosure requirement on the basis that it must be "in writing".

**Plaintiff's Lack of Knowledge Concerning the Producing Well**

The trial court found that plaintiff lacked knowledge of a producing well; specifically that plaintiff was not aware that the El Rancho land was a portion of the proration unit upon which a producing well was located.

**(a) Findings to support the conclusion of no negligence.**

■ The trial court concluded that plaintiff "was not negligent in failing to determine that the El Rancho property was part

of the Tracey 'B' proration unit." Defendants' suggestion, that the findings do not support this conclusion, is without merit.

The trial court found that the appraisal did not include the interest of the Paine Trust in the well and did not recognize that the El Rancho land was a part of the proration unit; that the documents drawn by the attorney did not "evidence that it was the intention of the parties to convey an interest in a producing gas well"; that neither the defendants nor the attorney made a disclosure to plaintiff; that the Paine Trust owned interests in several producing properties and that plaintiff had no reason to associate Cities Service checks (concerning the Tracey "B") with the El Rancho property. The trial court also found that even to a trained observer, the Tracey "B" would not appear to be a part of a production unit involving the El Rancho land and that Crouch's accounting for runs referred neither to El Rancho land nor the Tracey "B". The findings do support the conclusion that plaintiff was not negligent in failing to determine that the El Rancho property was part of the Tracey "B" proration unit.

### (b) Prudent man claim.

Defendants contend that the conclusion of no negligence on the part of plaintiff is an inapplicable legal conclusion. Defendants refer to the statutory provisions concerning trust administration which appear in Article VII of the Probate Code. Section 45-7-302, N.M.S.A.1978, requires a trustee, in dealing with trust assets, to "observe the standards * * * observed by a prudent man dealing with the property of another." Defendants point to evidence that if plaintiff had made a detailed examination of its own files it would have discovered the Paine interest in the producing well. Defendants assert that plaintiff's failure to discover what was in its own files shows, as a matter of law, that plaintiff did not meet the prudent man standard in dealing with the property of others. Defendants infer that the prudent man standard encompasses but may involve more than negligence; that even if plaintiff was not negligent, it still failed, as a matter of law, to comply with the standard of a prudent man dealing with the property of others. On this basis, defendants assert the remedy of rescission was barred.

The prudent man standard of § 45-7-302, *supra,* must be considered in relation to the statutory powers conferred upon a trustee. A specific power, stated in § 45-7-401(D)(24), N.M.S.A.1978, is to

employ persons, including attorneys, auditors, investment advisors or agents, even if they are associated with the trustee; to advise or assist the trustee in the performance of his administrative duties; *act without independent investigation upon their recommendations;* and, instead of acting personally, employ one or more agents to perform any act of administration, whether or not discretionary[.] (Our emphasis.)

The power above-quoted is subject to the trustee's "duty to act with due regard to his obligation as a fiduciary". Section 45-7-401(C), N.M.S.A.1978.

Section 45-7-401(D)(24), *supra,* is one of 26 specific statutory powers of the trustee. Minzner, *Article VII of the New Probate Code: In Pursuit of Uniform Trust Administration,* 6 N.M.L.Rev. 213 at 233 (1975-77) states that the trustee is authorized

to exercise such powers as a prudent man would exercise for the purposes of the trust. [*See* § 45-7-401(A), N.M.S.A. 1978]. Then, the new Code indicates the breadth of the powers a prudent man might exercise by listing 26 specific powers included within the general power[.]

There is testimony that plaintiff relied on "the best advice we could obtain from the accounting, the attorneys, the appraisals, and everything was to be based on that." The same witness also testified that plaintiff was "charged with following the prudent man rule in anything we do. And part of being prudent is to seek out the very best counsel when we are business selling or investing for our clients. We do not rely on our own judgment in very few cases without having some outside help due to the prudent man rule."

■ The fact that plaintiff obtained advice from an accountant, an attorney and an appraiser, and relied on their advice without an independent investigation on the part of the plaintiff, was not a violation of the prudent man standard. Nor, in light of the testimony quoted in the preceding paragraphs, was the advice obtained and relied upon contrary to plaintiff's obligation as a fiduciary. There was no failure, as a matter of law, to comply with the prudent man standard.

### (c) Failure to investigate.

■ Defendants also attack the "no negligence" conclusion on the basis of *Sawyer v. Barton,* 55 N.M. 479, 236 P.2d 77 (1951). *Sawyer* was concerned with the question of whether, prior to purchasing a mineral interest, the plaintiff should have made inquiry concerning the meaning of a recorded deed. *Sawyer* states "plaintiff should have inquired and having failed to do so, he is chargeable with notice of all the facts he might have learned, had he inquired * * *." The applicable legal rule was that if a person has knowledge of facts so that in the exercise of ordinary care that person ought to inquire, but does not, the person is charged with knowledge of all facts a reasonable inquiry could have revealed.

> Want of ordinary care alone will not charge him. The circumstances must be such that the failure to make the inquiry suggested by ordinary care will convict the intending purchaser of gross or culpable negligence if he is to be visited with all the consequences of having made the purchase with actual knowledge of the facts.

*Sawyer, supra.*

Defendants assert that *Sawyer v. Barton, supra,* applies to plaintiff as an intending seller. Defendants claim that plaintiff knew or should have known (see *Taylor v. Hanchett Oil Co.,* 37 N.M. 606, 27 P.2d 59 (1933)) of the trust estate assets so that plaintiff in the exercise of ordinary care should have made inquiries; that plaintiff's failure to make inquiries as to precisely what property interests were involved in the sale contract was gross negligence. On this basis, defendants assert that plaintiff should be held to have actual knowledge of the facts at the time of executing the contract of sale. Such would bar rescission because if plaintiff is charged with actual knowledge of what the fiduciaries failed to disclose, the nondisclosure by the fiduciaries is not pertinent.

The rule stated in *Sawyers v. Barton, supra,* is not applicable to the facts of this case. The trial court's finding, supported by substantial evidence, is that plaintiff "did not view this transaction as an adversarial sort of transaction because it made sense to . . . [plaintiff] that the active partner in the El Rancho Lounge should want to own the trust's interest in the business." As a witness explained: "We had in mind selling a business rather than property. Now, I realize the property went with it, but my personal opinion, all the way through that, we were selling a business and the property was just like furniture and fixtures in that business."

■ Because there was a nonadversarial transaction to sell the business and property of the liquor store, because neither the appraisal, the sale price nor the documents of the transaction alerted plaintiff to the possibility that a producing gas well might be involved, and because plaintiff was not alerted to such a possibility by persons upon whom it relied, plaintiff was not charged, as a matter of law, with making further inquiries, and thus is not charged with knowledge of facts such an inquiry would have disclosed. *Compare Grammer v. New Mexico Credit Corporation,* 62 N.M. 243, 308 P.2d 573 (1957).

Plaintiff's lack of knowledge of the producing well did not bar rescission of the contract of sale.

### Fiduciary Obligation of the Managing Partner

The trial court made the following findings.

The appraisal did not indicate the value of the Paine interest in the producing well and did not recognize that the El Rancho

land formed a part of a proration unit upon which a producing well was located. Plaintiff furnished Hefner a copy of the appraisal; Hefner negotiated the sale price on the basis of the appraisal furnished by plaintiff.

Defendants "knew that the El Rancho Lands were part of a proration unit upon which was located the Tracey 'B' Well; that this producing well was a valuable property; that the value of the producing well was not reflected in the purchase price of the El Rancho Lands."

Defendants "knew or should have known that the plaintiff * * * had no knowledge that the lands formed a portion of a proration unit upon which there was an existing and valuable gas well."

Defendants "knew or should have known that the value of the minerals was not included in the purchase price, and that it was not intended that the trust should convey unto the defendants the Paine interest in this producing gas well, and the Hefners failed or refused to notify * * * [plaintiff] of this error."

The trial court concluded that:

(a) Hefner, as managing partner of the El Rancho Package Store, had a fiduciary duty to plaintiff as a legatee of the Paine estate.

(b) Hefner, as the surviving partner and chief operating officer had a duty to the successors and heirs of Paine "to disclose the existence and value of partnership assets or assets of the El Rancho property, including the existence of the Tracey 'B' Well."

(c) Because of the fiduciary relationship, Hefner was "subject to a presumption that he took undue advantage of the deceased partner's estate and that he must show that the purchase and sale followed a full disclosure of all pertinent information and that the sale was free from fraud."

(d) "Hefner has the burden of showing that he exercised the highest good faith and fairness and that the transaction was entered into with a full knowledge of all material facts by both * * * [plaintiff] and Hefner."

(e) Hefner failed to meet this burden of proof.

■ Defendants make three arguments in their effort to avoid the effect of the above findings and conclusions.

First, they attack the finding that defendants knew or should have known that plaintiff had no knowledge that the El Rancho land was a part of a proration unit upon which a valuable gas well was located. Defendants state: "Nowhere in the Transcript is there any testimony to support such a statement. The testimony of Hefner supports the opposite position." This argument is based on a selective view of the evidence. When plaintiff's appraiser talked to Hefner about the property, Hefner kept silent about income from the runs. Hefner did not tell the attorney about the runs until after the contract was signed. Hefner received a copy of the offer to purchase, prepared on his behalf by the attorney; the offer makes no reference to a producing well. The sale price did not include any value for the interest in the producing well. The circumstances of the transaction shown by this evidence, the unorthodox location of the well, and the method of accounting by Hefner's accountant, point unequivocally to plaintiff's lack of knowledge. The finding has substantial evidentiary support.

Second, defendants assert that Hefner did not have an affirmative duty of disclosure. Defendants recognize that under *Harrison v. Harrison*, 21 N.M. 372, 155 P. 356 (1916), Hefner had a duty of full and complete disclosure. Defendants contend this duty was modified by the Uniform Partnership Act; they rely on § 54–1–20, N.M.S.A.1978, which states: "Partners shall render on demand true and full information of all things affecting the partnership to any partner or the legal representative of any deceased partner[.]" Defendants argue: "The duty to demand information first lay with * * * [plaintiff]. Demand was never made."

*Rogers v. Stacy*, 63 N.M. 317, 318 P.2d 1116 (1957), points out that § 54–1–20, *supra*, imposes a duty "upon all partners be-

cause of their confidential relationship to be completely honest, open, and fair." If a partner asks for information, the responding party is not to give false or incomplete information. Section 54–1–20, *supra,* does not limit a partner's duty of affirmative disclosure in transactions between partners. *Auld v. Estridge,* 86 Misc.2d 895, 382 N.Y. S.2d 897 (1976), explains:

> Implicit in the resolution of disputes between partners must be the special responsibilities partners bear to each other. In connection with their partnership affairs, they bear a fiduciary relationship to each other. This means in their intramural dealings they cannot fall back on the morals of the marketplace. * * * This means that one cannot act too quickly to protect his own financial position at the expense of his partners, even if the actor is without malice. There must be full disclosure of receipts and advantages before a partner * * * can safely bargain with his fellows upon their partnership dissolution.

Third, defendants recognize a duty of full and complete disclosure, the presumption of undue advantage and Hefner's burden (of evidence and of persuasion) to overcome the presumption. *Harrison v. Harrison, supra.* Defendants assert there was a disclosure and the presumption was overcome. They rely on testimony of Mrs. Hefner, that during the negotiations she told the attorney about the producing well and that the attorney was instructed by both defendants that the Paine interest in the well was to be purchased. Defendants assert that this disclosure to the attorney was a disclosure to plaintiff. We answer this in the next issue.

**Fiduciary Obligation of an Attorney Representing Both Parties**

The trial court found that the attorney "knew that the El Rancho Lands formed a part of the Tracey 'B' proration unit, and * * * did not divulge to * * * [plaintiff] that the documents which he was preparing would convey not only the interest of * * * [plaintiff] in the surface of the El Rancho Lands but could also be interpreted to convey the trust's interest in the oil, gas and other minerals under the El Rancho tract, including the trust's interest in the Tracey 'B' Well." Substantial evidence supports the finding of nondisclosure by the attorney. The trial court also "found" that the "attorney for both parties had an absolute duty to make a full disclosure * * * of the existence of this well and that the Paine interest in the well was a valuable interest which should be considered in the sale of the El Rancho Lands." The trial court concluded that the failure of the attorney to inform plaintiff of all pertinent facts surrounding the sale and purchase of the El Rancho property was a violation of the attorney's fiduciary duty to plaintiff.

Defendants contend that the attorney's knowledge is imputed to plaintiff, relying on *Sawyer v. Barton, supra,* which states that knowledge of a material fact, possessed by an attorney, is knowledge of the attorney's client. Inasmuch as § 45–7–401(D)(24), *supra,* authorizes a trustee to employ an attorney and without independent investigation, act upon the attorney's recommendation, defendants assert "it goes without saying that whatever knowledge the attorney has about the facts surrounding and material to the transaction are imputed to the Trustee and binding upon him." This argument disregards the fact that the attorney was representing both parties.

*Klemm v. Superior Court of Fresno County,* 75 Cal.App.3d 893, 142 Cal.Rptr. 509 (1977), states:

> Attorneys who undertake to represent parties with divergent interests owe the highest duty to each to make a full disclosure of all facts and circumstances which are necessary to enable the parties to make a fully informed decision regarding the subject matter of the litigation, including the areas of potential conflict and the possibility and desirability of seeking independent legal advice.

The attorney had a duty of "full disclosure" to plaintiff so that plaintiff could make a fully informed decision concerning the sale contract. Defendants would impute the attorney's knowledge to plaintiff even though

the attorney violated his duty of disclosure. Such imputation would be improper.

*Otsego Aviation Service v. Glens Falls Ins. Co.,* 277 App.Div. 612, 102 N.Y.S.2d 344 (1951), states:

> [W]hen an agent undertakes to act in a transaction for two parties whose interests are or can become adverse, as a reasonable man might foresee, knowledge of facts arising from the transaction is not deemed the knowledge of the principle to operate as a waiver or to work otherwise to his detriment, unless the principal has actual and not merely constructive knowledge of the true facts.

> \* \* \* \* \* \*

> When an agent serves dual interests he occupies a field of extremely delicate relationships. Where one of two parties served knows all the facts and the other knows only a part of them, it would be unreasonable by constructive imputation to charge the partially informed with a full knowledge.

As *McLean v. Paddock,* 78 N.M. 234, 430 P.2d 392 (1967), *overruled on other grounds, Duke City Lumber Company, Inc. v. Terrel,* 88 N.M. 299, 540 P.2d 229 (1975), points out, the principal is not affected by the knowledge of an agent as to matters involved in a transaction in which the agent deals with the principal as an adverse party.

Where, as here, plaintiff did not view the transaction as adversarial, and its attorney had knowledge of facts which did make the transaction adversarial but failed to disclose those facts so that plaintiff could make a fully informed decision, the attorney's undisclosed knowledge is not to be imputed to plaintiff. The information the attorney received from defendants did not fulfill defendants' duty of disclosure to plaintiff. This information was insufficient to overcome the presumption operating against defendants because the attorney's knowledge was not imputed to plaintiff.

There being, in fact, a violation of the attorney's duty of disclosure to plaintiff, the trial court did not err in rescinding the contract of sale.

The judgment of the trial court is affirmed. Defendants are to bear their appellate costs.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.