WRIGHT et al, *Respondents/Cross-Appellants,*
*v.*
OGLE et ux, *Appellants/Cross-Respondents,*
and
COOKE, *Respondent/Cross-Appellant,*
BALHIZER et al, *Intervenors.*
(No. 74 4056, SC 24755)

584 P2d 737

[ 505 ]

Max S. Taggart II, of Taggart & Taggart, Ontario, argued the cause and filed the briefs for appellants.

Bernard E. Cooke, Bakersfield, California, argued the cause and filed the brief in propria persona.

William E. Hurley, of Bernard, Hurley, Hodges & Kneeland, Portland, argued the cause and filed the briefs for respondents/cross-appellants.

Before Denecke, Chief Justice, Bryson, Linde, Justices, and Tanzer, Justice Pro Tempore.

DENECKE, C. J.

**DENECKE, C. J.**

This is a suit for dissolution of a partnership and an accounting. The partnership was originally formed on May 15, 1972. The partnership was reformed on June 13, 1972, and defendant Cooke was admitted as a partner. The primary dispute among the partners involves the contributions to capital that were to be made by defendants. Plaintiffs asserted, and the court below found, that Ogle agreed to contribute three parcels of real property which we shall refer to as M Street, Oak Patch and 18th Street. The court also found that Cooke agreed to contribute an option to purchase real property referred to as Gateway. Defendants appeal from the court's findings. Plaintiffs cross-appeal regarding certain elements of the accounting submitted by defendants. The primary disputes are factual. We review de novo but give substantial weight to the findings of the trial court regarding matters of credibility.

The formation and reformation of the partnership under the name Cardinal Investment Company are undisputed. All partners executed a written partnership agreement prepared by Bach, an attorney. The agreement specified that the partnership's purpose was "the purchase, development, sale, financing and mortgaging real and personal property." The agreement also specified that all partners with the exception of Boekelman were currently "engaged in professional or business activity aside from the partnership business and it is contemplated that those partners shall continue to engage in their present business or professional activities." Any profits or losses were to be divided equally. The agreement was silent regarding the contribution to capital of the partners.

Plaintiffs contend that Ogle agreed to contribute his interest in Oak Patch, M Street and 18th Street to the partnership. There are no written documents to

support that position. Written evidence is not required, however, when members of a partnership agree to transfer land to a partnership engaged in developing and selling land. *Harestad v. Weitzel,* 272 Or 199, 536 P2d 522 (1975). Two of plaintiffs testified that Ogle agreed to the transfer. Minutes of the partnership meetings reflect that the properties were discussed at partnership meetings, and plans were made for their development. Defendants, however, testified that they did not agree to contribute their property, but only to allow development by the partnership if financing and/or buyers could be found by the group. Attig, the only partner to testify who was not a party, generally corroborated defendants' testimony in this regard. He indicated that he was not aware of any agreement at the time of partnership formation regarding contributions of capital or what specific property would be developed. He further testified that he never heard Ogle agree to contribute any real property to the partnership. Even Wright, who testified that Ogle agreed to contribute the property, admitted that prior to formation of the partnership there was no clear, direct discussion of who was contributing what to the partnership, and that he had never heard Ogle agree to contribute any property. Bach contended that Ogle had so agreed, but was unable to recall when he had done so.

Although no writing is necessary for plaintiffs to prove their case, we find the absence of a writing to be evidence that no agreement existed. This is particularly true when, as here, all partners are experienced businessmen who regularly engage in real property transactions, including an attorney who drafted the agreements. Furthermore, the partnership never made nor offered to make any payments on the property, and Ogle continued to make several payments monthly. We also conclude that the capital contributions of the remaining partners are particularly relevant in determining what defendants agreed to contribute. Those contributions amounted to one

option to purchase property near Elk Lake which was obtained for $1. It was never exercised. These facts, in conjunction with the inability of plaintiffs to specify when Ogle agreed to contribute the property, convince us that no such agreement was ever made.

■ Plaintiffs also contend, and the court found, that Cooke agreed to contribute an option on Gateway. The testimony of plaintiff Wright regarding this agreement is more specific and convincing than his testimony concerning Ogle. But the same factors which convince us that Ogle did not agree to contribute property also apply with respect to Cooke. In addition, we are convinced that no agreement existed because of the contents of the partnership minutes kept by Wright and introduced into evidence by plaintiffs. Wright testified that he attempted to record all major discussions. In his minutes, including the meeting at which Cooke was admitted to the partnership, nothing is said concerning any agreement to contribute Gateway nor is Gateway even mentioned. We conclude, therefore, that no such agreement was ever made.

■ While Ogle and Cooke did not contribute their interest in the properties to the partnership, they did agree to permit the partnership to attempt to develop the properties; that is, to build apartments on the land. There is no express agreement to this effect in evidence, but the inference is clear. The partnership devoted substantial time and effort in attempts to develop these properties. The partnership contacted one Hovis, described as a mortgage finder, to assist in obtaining financing. The partnership prepared loan applications to finance development of the Gateway and M Street properties.

Hovis was scheduled to go to Seattle with Cooke and Ogle to apply for loans, but was unable to make the trip. Cooke and Ogle went alone and testified that they made the application for the partnership and it was refused. They further testified that they immediately reapplied for the same loan on behalf of themselves and one Camerot. Defendants' testimony in this

regard was very confused and contradictory. We find that Ogle and Cooke deceived their partners and without their partners' consent obtained financing through IDS Mortgage Company excluding the other partners from participating further.

■■ We conclude that the actions of Ogle and Cooke amounted to interception of a partnership opportunity to obtain financing and develop those properties. Partners owe a fiduciary duty to the partnership, and are liable to account to the partnership for all profits received from partnership opportunities wrongfully appropriated. ORS 68.340(1); *Fouchek v. Janicek,* 190 Or 251, 225 P2d 783 (1950). The evidence introduced at trial and as part of the accounting indicates Cooke and Ogle ultimately received a net profit on M Street and Gateway of $76,159.03. That profit is properly a partnership asset. The partnership has no other assets.

■ Both Wright and Bach also made claims for expenses advanced to the partnership. Wright claimed and proved expenditures of $1,438.85. Bach claimed and proved expenses of $3,808.96. No expenses were claimed on behalf of Attig or Boekelman by the assignees of their shares. Following deduction of the above expenses, net remaining partnership assets total $70,911.22. Each one-sixth share of partnership profits is thus worth $11,818.54. Judgment should be entered for plaintiffs in the amount of proven expenses and the value of the partnership profits to which each plaintiff is entitled.

Reversed in part and remanded for entry of judgment.

Costs shall not be awarded to any party.