[No. 663.   September 1, 1896.]

## MARY J. WILLEY, PLAINTIFF IN ERROR, v. BERTH-OLD RENNER, DEFENDANT IN ERROR.

PARTNERSHIP, WHAT CONSTITUTES.—A contract whereby one leased to another a mill on the agreement of the other to conduct the business, hire and pay employees, keep the mill in repair, furnish accounts of receipts and expenditures, and to pay the lessor one half of the net receipts, the flour, etc., on hand at the termination of the lease to be the property of the lessor, who was to pay the lessee one half its value, was a partnership agreement.

ID.—DISSOLUTION—ACCOUNTING AND SETTLEMENT—ASSUMPSIT — JURISDICTION.—In an action of assumpsit on such contract to recover an amount alleged to be due by reason of partnership transactions, where the record disclosed that, though the firm was dissolved, the accounts and business of the firm remained unsettled at the time of the institution of the suit,—Held: That a court of chancery alone had jurisdiction to settle the accounts, and the district court erred in retaining and submitting the cause to the jury.

ERROR, from a judgment for plaintiff, to the Second Judicial District Court, Bernalillo County.

Reversed and remanded (with directions); BANTZ, J., dissenting.

The facts are stated in the opinion of the court.

NEILL B. FIELD for plaintiff in error.

The court below was correct in holding that the contract was a partnership agreement. Dalton v. Hawes, 37 Ga. 115; Parker v. Canfield, 37 Conn. 250; Wood v. Beath, 23 Wis. 258; Whitney v. Ludington, 17 Id. 141, 142; Miller v. Price, 20 Id. 120; Cushman v. Bailey, 1 Hill. 526; Dob v. Halsey, 16 Johns. 34, 40.

Partnership accounts can not be settled in an action at law.   17 Am. and Eng. Ency. of Law, 1254, 1273. See, also, Lamalere v. Caze, 14 Fed. Cas. 965; Id., 1

Wash. 435; Harris v. Harris, 39 N. H. 48, et. seq.; Andrews v. Allen, 9 S. & R. 242, 243; Baxter v. State, 9 Wis. 44.

B. F. ADAMS for defendant in error.

If the contract was a contract of partnership, as plaintiff in error claims, she should have demurred to the declaration. Chitty on Pld. 639, et seq.; Steph. on Pld. 157.

Having pleaded, plaintiff in error is in no position to complain, and this point can not be considered in a review of the case. Beall v. Territory, 1 N. M. 509; Watkins v. U. S., 9 Wall. 762; Aurora City v. West, 7 Id. 92; U. S. v. Boyd, 5 How. 51; Overland Dispatch Co. v. Wedeles, 1 N. M. 528; Young v. Martin, 8 Wall. 357; Clearwater v. West, 1 Id. 42.

The contract sued on is not a contract of partnership, and plaintiff and defendant were not partners with respect to each other. Waugh v. Carver, 1 Smith's Lead. Cas. 1327.

To constitute a partnership inter se there must be such a community of interest as empowers each party to make contracts, incur liabilities, manage the whole business, and dispose of the whole property, a right which, by the dissolution of the partnership by the death of one passes to the survivor, and not to the representatives of the deceased. Donnel v. Harshe, 67 Mo., and citations; Musser v. Brink, 82 Id. 242; Ashby v. Shaw, Id. 76; McDonald v. Matney, Id. 358; Newspaper Co. v. Farrell, 88 Id. 594.

If the contract was a contract of partnership, and all business had been fully settled, then an action at law would lie for the balance due from either party to the other. Silver v. R'y Co., 5 Mo. App. 381.

HAMILTON, J.—This is an action of assumpsit brought in the district court of Bernalillo county by

the defendant in error against the plaintiff in error, and is based upon a contract containing, among other things, the following:

"Agreement made this nineteenth day of June, 1889, between Mary J. Willey, of the first part, and B. Renner, of the second part, both of Albuquerque, New Mexico. The party of the first part does hereby rent and lease unto the party of the second part that certain flouring mill, situated in block 42 of the town of Albuquerque, known as the 'Albuquerque Mills,' for the term of one year, beginning on the first day of July, 1889, subject to the conditions hereinafter set out, on the part of the party of the second part. The party of the second part agrees and promises, in consideration of the renting above specified, to take charge of said mill, and run the same to the best of his ability during the term aforesaid; to hire and pay all help required to run said mill; to keep the same in repair, and to furnish all supplies needed to operate the mill; to keep accurate accounts of all receipts and expenditures in said business and with the customers of said mill; and after deducting from the gross receipts all expenditures for wages, repairs, and supplies, to pay over to the party of the first part one half of the residue or remainder of such receipts, such payments to be made weekly each Saturday night, or oftener, at the option of the party of the second part. He is also to furnish said party of the first part from said mill all flour and meal that she may require for her household use, and all mill feed she wishes for her horse, cow, chickens, or other domestic creatures of that kind." The agreement then provides that the said contract may be terminated at any time by either party upon two weeks' notice in writing of the intention so to do. The contract then contains the following provision: "Upon the termination of this agreement, any wheat, corn, or flour on hand shall remain the property of the party of

the first part, who shall pay to the party of the second part one half of the fair value thereof, such value to be ascertained, in case said parties fail to agree thereon, by arbitrators to be selected one by each party, such abitrators, if they fail to agree, to select a third, whose decision shall be final. The business to be conducted on a cash basis, and no credit given.

"MARY J. WILLEY.

"B. RENNER."

From the testimony offered on the trial below it appeared that the plaintiff took possession of the mill property under the said contract, and ran the same during the months of July and August, up to the first day of September, 1889; that he furnished to the defendant weekly statements purporting to show the amount of receipts and expenditures made by the plaintiff in the operation of said mill, and paid to the defendant what he claimed to be the defendant's proportionate share of the net profits realized in the operation of said mill. These statements were delivered to the defendant, and were received by her, as the testimony shows, without any objection at the time they were received. It also appears that there were some articles of property in the mill at the time the plaintiff took hold of it under the contract, which were used by him in its operation. The plaintiff ran the mill under this contract until about the middle of August, 1889, when a disagreement appears to have arisen between him and the defendant in relation to its operation. This controversy appears to have grown out of the fact that the defendant was dissatisfied with the manner in which the plaintiff was operating the mill, and in the fact that the plaintiff was not keeping accurate accounts of the business, and was not properly and correctly accounting to the defendant for her share of the profits. The plaintiff, on the other hand, claimed that he had accurately accounted to the defendant each week for all the moneys

realized in the operation of the business. This diffi-
culty led to the plaintiff's giving notice to the defendant
that he would give up the mill, which he did on the
first day of September, 1889. It further appears from
the testimony offered by the plaintiff that at the time
the plaintiff gave up the mill and surrendered it back
to the defendant an effort was made between them to
come to a settlement in reference to the business, the
plaintiff claiming that he was entitled to certain money
due on account of one half of the value of the wheat,
corn, and other articles left in the mill at the time he
gave it up. The defendant, upon the other hand,
claimed that the plaintiff was not entitled to anything
whatever, but that, on the contrary, the plaintiff was
indebted to the defendant on account of the net profits
realized from the operation of the mill, and also that he
owed the defendant certain other sums of money grow-
ing out of the business transactions of the partnership.
The trial resulted in a verdict for the plaintiff for the
sum of $130.80, and a judgment was rendered thereon.
After unsuccessful motion for a new trial, this writ of
error has been prosecuted.

In the trial below the court held that the above
contract was one of partnership, creating a partnership
between the plaintiff and the defendant.
PARTNERSHIP, In this, we think that the court was cor-
what constitutes. rect, and was sustained in that view by an
abundant weight of authority. Wood v. Beath, 25
Wis. 258; Miller v. Price, 20 Wis. 120; Dob v. Hal-
sey, 16 Johns. 34, 40; Parker v. Canfield, 37 Conn. 250.
There are, however, various grounds of error assigned
and insisted upon. Without giving these in full and
in detail, we may say that the point upon which the
case must be determined arises under the grounds of
error suggested in the tenth, eleventh, twelfth, and
thirteenth assignments of errors. Combining these
several grounds of error together, they are, in sub-

stance: That the court erred in instructing the jury
that the keeping of correct accounts by the plaintiff
and payment to the defendant of all sums coming to
her, at the stated times provided for in the contract,
and the payment of all bills, constituted a settlement
of the partnership, and that the court erred in leaving
to the jury the consideration of the question as to
whether there had been a settlement between the plain-
tiff and the defendant of the partnership affairs prior
to the time of the institution of the suit.    The court
having determined that the contract upon which the
suit was brought created a partnership between the
plaintiff and the defendant, the question is: Did the
testimony show a settlement between the plaintiff and
the defendant of all of the partnership business in such
a manner as to entitle the plaintiff, as one of the part-
ners, to maintain this suit against the defendant?

It is a proposition so well settled as to scarcely
require authority to support it that one partner can
not maintain an action at law against
another partner to recover an amount
claimed by him by reason of partnership
transactions until there has been a final
settlement of the affairs of the partnership
by discharging its liabilities and collecting its assets,
and definitely ascertaining the surplus and the share to
which each member of the firm would be entitled.
Until a final settlement is effected, until the parties
come together and have an adjustment of all of the
business growing out of the firm, and until it is ascer-
tained what is due one partner under such settlement,
the only remedy of the partner is to apply to a court
of equity for a dissolution of the firm, and for an
accounting as to the partnership business.    2 Bates,
Partn., sec. 849.    While the business of a partnership
remains unsettled, no action at law can be maintained
by one partner against another.    Harris v. Harris,

*Margin note: DISSOLUTION of partnership: accounting and settlement: assumpsit: jurisdiction.*

39 N. H. 48, et seq.; Burns v. Nottingham, 60 Ill. 531; Ridgway v. Grant, 17 Ill. 117; Chadsay v. Harrison, 11 Ill. 151; Frink v. Ryan, 3 Scam. 322.    See, also, to the same effect, Wood v. Beath, 25 Wis. 254; Miller v. Price, 20 Wis. 124; Dob v. Halsey, 16 Johns. 34; 17 Am. and Eng. Ency. of Law, 1254, 1273.    The accounting and settlement and the striking of a balance must have the express or implied approval of all of the partners in order to make it binding.    Lamalere v. Caze, 14 Fed. Cases, 65.    It may be true that, if one partner makes a full settlement of the accounts of the partnership affairs, and presents them to the other partner, and the other partner retains such accounts for a considerable length of time without objection thereto, it might be said that he approved the same by his silence, and would render himself liable upon a balance therein stated.    But the rule is universal, and, so far as we know, without exception, that there must be an implied or an express assent on behalf of the partners to the adjustment and settlement of the accounts, and the balance which may be found as a result of that settlement, to enable one partner to maintain an action against the other.    Does the record in this case show that the plaintiff and the defendant had such a settlement of the partnership affairs which met the assent and approval of both, by which the accounts were taken, and a balance ascertained, so as to enable the plaintiff to maintain his suit?    It appears from the testimony of the plaintiff that he had full charge of the business of the mill, that he kept the accounts, that he purchased the supplies, that he sold the product of the mill, and that he had entire charge of all the business. He claims that he furnished to the defendant statements each week of the amount of the business done by the mill during that week, and paid to her her proportionate share of the net profits.    The defendant did not give to the plaintiff any receipts upon the receiving

of these statements, but only accepted them without
any comment, either approval or disapproval, at the
time they were received. The business ran along
in this way until the fourteenth or fifteenth of August,
some six weeks after the business began. It appears
by the plaintiff's testimony that about this latter day
the defendant came into the mill, and had some talk
with the plaintiff as to the manner in which he was
running the business; that she was dissatisfied, and
made her dissatisfaction manifest to the plaintiff; that
she then stated to customers not to come into the mill;
that the plaintiff was swindling them. He also stated
that after this trouble he gave the defendant notice that
he would give up the mill, and he asked for a settlement
of the accounts. It further appears from the testimony
that Mr. Clancy, who was the agent of the defendant,
came to the plaintiff, in order to bring about a settle-
ment of the affairs of the mill. Mr. Clancy, as the
agent of the defendant, and the plaintiff, had some
controversy as to the condition of the business. The
plaintiff claimed that there was money due and
coming to him from the mill. The defendant,
through her agent, Mr. Clancy, insisted that there was
nothing due to the plaintiff, and ordered him out of
the mill. It is stated by the plaintiff that at this time,
when an effort was being made between him and Clancy
to reach a settlement, he gave a statement of everything
to Mr. Clancy, and that Mr. Clancy refused to allow
him anything, stating: "I don't owe you nothing.
You get out of here!" This was the statement made
by Clancy to the plaintiff ordering him out of the mill.
The testimony of the plaintiff as to this attempted set-
tlement is in part as follows:

"Q. Your accounts show he did owe you some-
thing, don't they? A. Certainly he owed me.

"Q. And he told you he didn't owe you anything,
and yet you swear he accepted your accounts without
objection? A. Yes, sir. Half of the stuff in the mill

was mine, and, besides, cash money I loaned out of my own money.

"Q.   And he told you he didn't owe you anything, and to go out of the mill?   A.   Yes, sir.

"Q.   And that is the last settlement you had?   A. Yes; but that was no settlement.

"Q.   That was the last settlement of accounts that you had?   A.   Yes, sir."

It also appears in the letter of the plaintiff attached to his testimony that the plaintiff wrote to Mr. Clancy on August 15, some two weeks before, asking him for a settlement, and saying in the letter, "I wish you come here, and settle with me."   An examination of the testimony of the plaintiff and the defendant contained in this record clearly discloses the fact that there was no settlement or adjustment of the accounts and business of the firm.   While it is true that the dissatisfaction and difficulty which had arisen between the plaintiff and the defendant as to the operation of the business, resulting in the notice given by the plaintiff, and his quitting the mill, operated as a dissolution of the firm, it did not in any manner operate as a settlement of the partnership accounts between the plaintiff and the defendant as to the business of the firm.   While the firm was dissolved, the accounts and business of the firm remained unsettled at the time the plaintiff instituted this suit.   It is therefore our opinion that a court of chancery alone had jurisdiction to adjust and settle these accounts of the partnership between the plaintiff and the defendant, and that the action of the district court in retaining the cause and submitting it to the jury under the testimony contained in the record was error.   The case should therefore be reversed and remanded, with directions to the district court to dismiss the suit.

SMITH, C. J., and LAUGHLIN, J., concur.

BANTZ, J. (dissenting).—There was evidence to show that accounts showing receipts and disbursements were furnished each week by Renner to Willey, and at the same time the cash balances were each week paid over. There was also evidence to show that no objection was made to the accuracy of the accounts on the balances so paid at the time. In this condition the partnership, if a partnership, was dissolved, and Willey took possession of the stock in trade. By the terms of the contract Renner was entitled to be paid one half of the value of certain articles of such stock, and this action is to recover that one half value. Willey now denies that there was any express or implied settlement of the accounts between her and Renner. If there had been no such settlement, an action at law could not be maintained; if there had been such settlement, it is conceded that this action can be maintained. The question as to whether there had been such a settlement was not to be determined on the mere assertion of one of the parties. It was a mixed question of law and fact. The distinct question as to whether there had been a settlement was determined from all the circumstances at the trial below in favor of Renner. That finding is supported by sufficient evidence, and, having sufficient evidence to sustain it, it is not a reviewable question on appeal. It is the settled law in this territory that a finding of fact which is sustained by evidence will not be reviewed in this court. Although we may have reached a different conclusion on such evidence, it is not, for that reason, reviewable here.