749 P.2d 84

**Walter J. LEVY, Plaintiff-Appellee,**

v.

**Henry W. DISHAROON,
Defendant–Appellant.**

No. 17245.

Supreme Court of New Mexico.

Feb. 2, 1988.

Marchiondo, Vigil & Voegler, Michael E. Vigil, Albuquerque, for defendant-appellant.

Roger Eaton, Albuquerque, for plaintiff-appellee.

## OPINION

SOSA, Senior Justice.

This is a suit in equity filed by appellee Walter Levy (Levy) against appellant Henry Disharoon (Disharoon) in the District Court of Bernalillo County seeking a partnership accounting.[1] Following a non-jury trial, the district court entered judgment in favor of Levy. Disharoon appeals. We affirm in part and reverse in part and remand.

FACTS

Levy owns 85% of the stock of Turbine Eagle Charters (TEC), a Subchapter S corporation created for the purpose of flying aircraft charter. Levy's son, Larry Levy, owns 15% of the remaining stock. In July 1984, Disharoon, president and director of Crestview Aviation, d/b/a Western, entered into an oral agreement with TEC in which Western was to provide TEC reduced rates for services in consideration for Disharoon obtaining a share of TEC's profits. Under this agreement, Disharoon and Levy would each be entitled to 42.5% of the profits, and Larry Levy would receive the remaining 15% of the profits. (Disharoon was not a shareholder of TEC.)

While this business agreement was in effect, Levy and Disharoon entered into another business venture. About September or October 1984, the parties discussed purchasing a jet plane together and forming a partnership for its operation. After locating a jet they could purchase, Disharoon told Levy that the aircraft was valued

---

1. This case initially involved two separate complaints. Turbine Eagle Charter (TEC) filed Cause No. 8505510 against Western Aviation (Western) for immediate possession of airplanes kept at the hangar of Western and leased for operation of an air ambulance service. Levy filed Cause No. 8507887 against Disharoon and Western for accounting and breach of a lease agreement. The suits were consolidated, but later severed on Levy's motion because Western had filed for bankruptcy. Only the partnership accounting portion of the case was tried.

at $1,100,000, but that they could buy it for $953,000, along with equipment worth $30,000, for an additional $10,000. Once Levy approved the purchase, Disharoon sent a telegram to the escrow agent for Insured Aircraft Title Company in Oklahoma City (title company) offering to purchase the jet for $860,000. Disharoon sent $25,000 as a down payment from funds of Wonder Construction, a corporation he owned.

On November 21, 1984, Levy and Disharoon entered into a written partnership agreement to purchase the jet. On this same date, they borrowed $975,000 from Sunwest Bank (Sunwest) and assigned the lear jet as collateral for the note. The bank note was for six months of interest only, with the first principal payment due on May 1, 1985. The note shows TEC as the borrower, with Disharoon and Levy signing as personal borrowers. TEC was shown as the registered owner of the aircraft, but Levy testified that this was a temporary arrangement until the parties determined how the aircraft should be held from a tax and liability point of view. After the note and the security agreement were signed, Sunwest wired $938,000 to the title company to consummate the sale for a total purchase price of $963,000. On December 3, 1984, Disharoon, on behalf of Crestview Aviation (d/b/a Western today), entered into a purchase agreement with Cardinal Aviation to purchase the lear jet for $860,000, instructing the escrow agent to have the balance of $103,000 wired to Disharoon's personal banking account. TEC also paid Disharoon $25,000 from the partnership's loan proceeds as reimbursement for the down payment he had made.

The jet was then leased to TEC and Western as part of the partnership's income producing operation. The partners also opened a partnership account to pay for the note and jet expenses. Each partner contributed $5000 to this account. The parties understood, however, that if the partnership account was insufficient to cover the jet's expenses, they would use their share of the net profits from TEC to pay the jet's costs.

On April 16, 1985, a few months after the partnership was formed, Disharoon wrote to Levy stating that he wanted to terminate his contract with TEC and asking for a distribution of TEC profits. As of this date, Disharoon's share of profits totaled $32,786.84. On July 1, 1985, Disharoon again wrote Levy advising him that all business relationships had terminated as of April 16, 1985. Levy in turn, by letter dated July 10, 1985, informed Disharoon of his continued obligations concerning the partnership until all affairs would be completely wound up and the aircraft sold. Since the dissolution of the partnership, Levy has been in charge of winding up the business. Levy attempted to sell the jet and by the time of trial had received an offer for $730,000.

In settling the accounts of the partnership, the district court made the following findings concerning the partnership's outstanding liabilities. The court found that in December 1984, on behalf of the partnership, TEC had made an interest payment of $9,596.41 on the jet purchase note because it owed Levy money. The court also found that from February 1985 through February 1986, TEC had made all interest payments on behalf of the partnership, totaling $124,934.27.[2] All interest payments were recorded on TEC's books as a receivable from the partnership. In addition to the interest, TEC paid the jet's operating expenses, totaling $168,458.89 to the date of trial. These payments were also carried as a receivable of TEC from the partnership. Moreover, the district court found that Disharoon had misrepresented the lowest purchase price for the aircraft with the intention of deceiving Levy. The court concluded that Disharoon breached a fiduciary duty to Levy in appropriating to his own use money borrowed from Sunwest and that this act constituted fraud. Levy was awarded actual damages of $70,000 for fraud and $100,000 in punitive damages. The district court also awarded Levy one-

---

**2.** Levy, as a member of the Board of Directors of Sunwest, made arrangements with Sunwest for the partnership to continue paying interest only on the note.

half of all the expenses and interest payments made by TEC.

The judgment provides in part that Disharoon is liable:

a) For $128,000 acquired from funds borrowed from Sunwest and to repay the partnership $19,042.10 of interest that accrued on the $128,000 through February 28, 1986.

b) To pay Levy one-half of the interest that TEC paid to Sunwest, totaling $57,-743.79.

c) To pay Levy one-half of the expenses of the lear, which is owed to TEC, totaling $84,299.45 through February 28, 1986.

d) To pay Levy a portion of the December 1984 interest payment, which amount is $4,788.21.

e) To be liable for one-half of any continuing obligations of the partnership until the asset is disposed of, including one-half of the loss incurred on the sale.

Disharoon raises the following errors on appeal: (1) that no personal judgment could be entered in favor of Levy; (2) that the district court erred in entering a judgment for fraud and punitive damages in favor of Levy; and (3) that Exhibit No. 6 was improperly admitted into evidence.

## I. PERSONAL JUDGMENT FOR PART-NER

■ Disharoon argues that "the trial court lost sight of the fact that this [was] a suit for partnership acounting," because the court's judgment orders Levy accountable to the partnership and Disharoon liable to Levy for specified sums. Disharoon relies primarily on *Laddon v. Whittlesey,* 44 Md.App. 19, 408 A.2d 93 (1979), for his contention that a personal judgment cannot be awarded to a partner in an action for accounting. *Laddon* is distinguishable. In that case, the Maryland Court of Appeals held that the trial court had committed reversible error because it addressed the personal dispute between the parties rather than the dissolution of the partnership. The court stated: "[T]he [trial] court was premature in issuing its final judgment before deciding the fate of the partnership

business which appears from the record extract to be in a state of purgatory still awaiting the expiation of its partners' sins." *Id.* at 33, 408 A.2d at 101. In this case, by contrast, the partnership was dissolved, and the equity court, assuming jurisdiction of the matter, settled the accounts of the parties, determined the outstanding and unpaid obligations of the firm, and fixed the liabilities of each partner. Disharoon incorrectly argues that a court of equity in a suit for accounting has no power to enter a money judgment against one of the parties. "A court of equity has power not only to state the account between the parties, but to enter judgment in favor of one and against another as the state of the account may require." *Holman v. Cape,* 45 Wash.2d 205, 206, 273 P.2d 664, 665 (1954) (per curiam) (quoting *Yarwood v. Billings,* 31 Wash. 542, 543, 72 P. 104 (1903)). Thus, when a partner has proven expenses, a personal money judgment may be rendered in his favor. *See Wright v. Ogle,* 283 Or. 505, 584 P.2d 737 (1978).

■ Although Disharoon concedes the partnership's indebtedness to TEC, he next maintains that a judgment cannot be entered against him because TEC owes him money for his share of the profits. Disharoon's position is untenable. The district court concluded that Disharoon was entitled to $32,786.84 as his share of the profits from July 1984 through April 1985. The court made allowance in the judgment against Disharoon for this amount. But as the record shows, the partnership's obligations to TEC exceeded any profits TEC owed to Disharoon. Because Disharoon voluntarily terminated his contract relationship with TEC as of April 1985, he is not entitled to any net profits accrued after that date and thus to any other credits against his liability. Alternatively, and what becomes the crux of his contention on appeal, Disharoon argues that the trial court erred in awarding Levy damages for amounts that TEC paid. For the reasons stated below, we conclude that the district court did not err in awarding Levy damages for one-half of the interest and ex-

penses TEC paid on behalf of the partnership.

The Uniform Partnership Act, NMSA 1978, Sections 54-1-1 to 54-1-43, governs the rights, duties and obligations of each partner. By letter dated July 1, 1985, Disharoon dissolved the partnership by ceasing his association with it. § 54-1-29. This dissolution, however, did not terminate the partnership's obligations and the partnership continued until the winding up of its affairs was completed. § 54-1-30. As liquidating partner, Levy advised Disharoon of his continued obligations until all partnership affairs were completed, and also of Levy's attempt to sell the lear jet in order to mitigate any further costs to the partnership. A liquidating partner can act on behalf of his former associates in matters in which they still have a common interest and are under a common liability. § 54-1-35(A)(1); *see also Cotten v. Perishable Air Conditioners,* 18 Cal.2d 575, 577, 116 P.2d 603, 604 (1941). Sometimes the period between dissolution and termination requires that the partnership business be conducted for the preservation of its assets. Here, in order to protect and preserve the partnership's only asset from foreclosure, Levy, through TEC, continued paying the interest on the bank note and the operating costs for the jet.

■ Generally, a personal judgment in favor of one partner against another for outstanding obligations to third parties is improper "until all the partnership assets have been converted into money, the debts paid and a final balance ascertained." *Hooper v. Barranti,* 81 Cal.App.2d 570, 184 P.2d 688 (1947). Under these circumstances, however, we conclude that it was not improper for Levy to obtain a money judgment for expenses and interest payments made by TEC because for all practical purposes Levy and TEC are one and the same. *Cf. Moore v. Malis,* 292 Ky. 106, 166 S.W.2d 52 (1942) (judgment directing defendant partner to sell partnership prop-

erty that was transferred to corporation owned by defendant was proper). Levy is a majority shareholder of TEC and it was through Levy's direction that TEC continued paying interest and operating expenses on behalf of the partnership. In essence, therefore, Levy paid the partnership's obligations and incurred costs for the preservation of partnership property; he should be indemnified for his payments. § 54-1-18(B).

"[A] court is not always bound to regard the legal status of a corporation as an existence in itself regardless of its stockholders." *Eastern Navajo Indus., Inc. v. Bureau of Revenue,* 89 N.M. 369, 373, 552 P.2d 805, 809 (Ct.App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976). The circumstances of a case may sometimes require a court of equity to disregard the corporate entity and to look to the owner as the real party in interest. *State Trust & Sav. Bank v. Hermosa Land & Cattle Co.,* 30 N.M. 566, 240 P. 469 (1925). We therefore conclude that the district court acting under equitable principles properly disregarded TEC's corporate form and entered a personal judgment in favor of Levy.

We do, however, reverse the court's determination of Levy's award for the interest payments made through February 28, 1986. The court concluded that this amount was $57,743.79. The court erred in its calculation. The correct amount is $52,945.64.[3] The trial court also erred in calculating Disharoon's liability for the December 1984 interest payment. That amount should be $4,798.21, not $4,788.21.[4] Accordingly, these amounts are adjusted in the judgment.

## II. FRAUD ISSUE AND PUNITIVE DAMAGES

■ Disharoon contends that the district court erred in awarding Levy damages for fraud and punitive damages because any claim for fraud was premature. Di-

---

**3.** The total interest payments of $124,934.27 were reduced by $19,043 of interest that accrued on the money Disharoon had defrauded from the partnership; one-half of this amount is $52,945.64.

**4.** The December 1984 interest payment was $9,596.41; one-half of this amount is $4,798.21.

sharoon relies on *Willey v. Renner*, 8 N.M. 641, 646, 45 P. 1132, 1134 (1896), in which this Court stated:

> It is a proposition so well settled as to scarcely require authority to support it that one partner can not (sic) maintain an action at law against another partner to recover an amount claimed by him by reason of partnership transactions until there has been a final settlement of the affairs of the partnership * * *. Until a final settlement is effected, until the parties come together and have an adjustment of all of the business growing out of the firm, and until it is ascertained what is due one partner under such settlement, the only remedy of the partner is to apply to a court of equity for a dissolution of the firm, and for an accounting as to the partnership business.

We have no quarrel with the general rule announced in *Willey* that partners cannot sue each other at law for acts relating to the partnership unless there is an accounting, prior settlement, or adjustment of the partnership affairs. This rule, nevertheless, is inapplicable to this case because this action is not one at law, but one in equity seeking a partnership accounting and settlement. *Holcomb v. Davis*, 431 S.W.2d 881 (Ky.1968). When there is a partnership accounting and defendant is charged with fraud and misconduct, defendant is answerable in that proceeding for all damages sustained by plaintiff on account of defendant's breach of duty to the firm. *McIntosh v. Ward*, 159 F. 66 (7th Cir.1907). The governing motive of equity is to grant full relief and to adjust in one suit the rights and duties of all parties, which flow out of or are connected with the subject matter of the suit. *Maruca v. Phillips*, 139 Conn. 79, 90 A.2d 159 (1952). Disharoon contends, however, that the fraud claim was never properly before the court because it was not pleaded. Disharoon's contention is meritless. Although the fraud issue was not pleaded in the complaint, Levy tried the issue and at the close of his case moved that the pleadings

be amended to conform to the evidence. The district court granted the motion without objection from Disharoon. Disharoon claims no surprise or prejudice by the court's ruling. The fraud issue was properly before the court. *See Citizens Bank v. C & H Const. & Paving Co.*, 89 N.M. 360, 552 P.2d 796 (Ct.App.), *cert. denied*, 90 N.M. 7, 558 P.2d 619 (1976).

In a partnership relationship, each partner has the right to have his co-partner exercise good faith in all partnership matters. *Citizens Bank of Clovis v. Williams*, 96 N.M. 373, 630 P.2d 1228 (1981). It follows from the general requirement of good faith in partnership dealings that a partner is not allowed to gain any advantage over a co-partner by fraud, misrepresentation or concealment, and for any advantage so obtained he must account to the co-partner. § 54–1–21(A). The district court concluded that Disharoon had breached a fiduciary duty in appropriating to his own use $128,000 of the money borrowed from Sunwest. The facts show that the lear jet was actually purchased for $860,000, but that Disharoon told Levy the sale price was $963,000. The difference of $103,000 was wired to Disharoon's personal banking account in Chicago. Thus, Disharoon defrauded the partnership in the amount of $103,000, not $128,000.[5]

We conclude the court was correct in holding Disharoon accountable for the fraud, but erred in awarding Levy $70,000 in actual damages. The reason for this error is as follows. The court applied the net result of Disharoon's fraudulent gain to reduce the partnership debt at Sunwest. We find no error in this application, but conclude that by so doing the court in essence awarded Levy his compensatory damages which we believe, unless the district court finds otherwise, was one-half of the misappropriated funds or $51,500. Had the court not held Disharoon accountable for his fraud, Levy's liability for the note would have been greater. There is no evidence that Levy suffered an additional

---

5. The additional $25,000 TEC paid to Disharoon from the partnership's loan proceeds was a reimbursement for funds Disharoon had personally contributed towards the purchase price of the aircraft. The court incorrectly added this amount to the sum of $103,000.

$70,000 in actual damages. We thus reverse that portion of the court's judgment.

■ The trial court also awarded Levy $100,000 in punitive damages. The amount of punitive damages is left to the discretion of the fact finder and will not be disturbed on appeal unless it is "so unrelated to the injury and actual damages proven as to plainly manifest passion and prejudice rather than reason and justice." *Galindo v. Western States Collection Co.*, 82 N.M. 149, 155, 477 P.2d 325, 331 (Ct.App.1970). (quoting *Faubion v. Tucker*, 58 N.M. 303, 307, 270 P.2d 713, 716 (1954)). The $100,000 punitive damage award is not so unrelated to the actual damages to be clearly erroneous. Disharoon's conduct in misrepresenting the jet's actual sale price and misappropriating the partnership's funds deserves punishment. We thus uphold the $100,000 punitive damage award.

## III. EXHIBIT NO. 6

■ Under SCRA 1986, 11–803(E), records kept in a regularly conducted activity are admissible if the custodian of the records or other qualified witness appears in court to identify the records and testify as to the mode of their preparation and their safekeeping. *State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (Ct.App.1976). Levy's Exhibit No. 6 consisted of letters, reports, sale agreements, and other documents kept by the title company which related to the sale of the aircraft. The custodian of the records did not testify to the trustworthiness of these records in court. Levy maintains that the documents were nevertheless properly admitted because they were self-authenticating under SCRA 1986, 11–902. We disagree. Exhibit No. 6 does not fall within the narrow exception of self-authenticating documents. Exhibit No. 6 should not have been admitted without a proper foundation. The court's error, however, was harmless because the facts established by Exhibit No. 6 were supported by other competent evidence, so any error could not have changed the court's result. We will not correct a harmless error. *Jewell v. Seidenberg*, 82 N.M. 120, 477 P.2d 296 (1970).

Based on the foregoing, we affirm the district court's decision, but reverse only the court's determination regarding the interest payment owed to Levy and the actual damage award for fraud. We set the total interest payment due at $57,743.85 (this includes the December 1984 payment) and remand for new findings and conclusions on actual or compensatory damages for fraud.

IT IS SO ORDERED.

STOWERS and RANSOM, JJ., concur.