2001-NMCA-040

27 P.3d 990

Donald R. FATE, Margaret L. Fate, a/k/a Marjorie Fate, Cella B. Milavec, Petitioners–Appellants/Cross–Appellees,

v.

Patricia A. OWENS, a/k/a Patricia A. Sichler; Re/Max Advantage, Ltd., A New Mexico Limited Partnership; Valley View Investors, Ltd., A New Mexico Limited Partnership; and Panoan Estates Limited Partnership, A New Mexico Limited Partnership, Respondents–Appellees/Cross–Appellants.

No. 20,682.

Court of Appeals of New Mexico.

April 2, 2001.

Certiorari Denied, No. 26,972, June 26, 2001.

Kevin D. Hammar, David A. Grammar III, Aldridge, Grammar, Jeffrey & Hammar, P.A., Albuquerque, NM, for Appellants/Cross–Appellees.

Dennis M. McCary, Dennis M. McCary, P.C., Albuquerque, NM, for Appellee/Cross–Appellant Patricia A. Owens and Re/Max Advantage, Ltd.

Roy A. Anuskewicz, Jr., Albuquerque, NM, for Appellee/Cross–Appellant Panoan Estates Limited Partnership.

Floyd D. Wilson, Wilson & Pryor, P.C., Albuquerque, NM, for Appellee/Cross–Appellant Valley View Investors, Ltd.

### OPINION

WECHSLER, Judge.

{1} This case presents issues of first impression concerning the rights and responsibilities of general and limited partners in a limited partnership. Petitioners, Donald R. Fate, Margaret Fate, a/k/a Marjorie Fate, and Cella B. Milavec, who are limited partners, appeal from the trial court's order dismissing their claims against Patricia Owens a/k/a Sichler (Owens), the general partner, and other entities related to Owens (collectively Respondents). Respondents filed a cross-appeal, arguing that the trial court erred when it took their claims for costs and attorney fees under advisement until such time as all the claims and counterclaims between the parties are resolved.

{2} Petitioners argue on appeal that the trial court erred in determining that their claims for accounting, partnership dissolution, appointment of a receiver, breach of fiduciary duty, fraud, and constructive trust were derivative claims asserted on behalf of the partnership, rather than direct claims asserted on behalf of the limited partners themselves. We hold that because Petitioners' breach of fiduciary claim contains an individual element, they can bring the claim individually. We also hold that Petitioners' claims for accounting and dissolution can be asserted individually and do not have to be brought derivatively. We further hold that under the circumstances of this case and the law that governs it, the claims for breach of fiduciary duty, fraud, and constructive trust can be pursued as part of the action for accounting and dissolution. Because we are reversing the trial court's order and remanding the case for further proceedings, Respondents are no longer prevailing parties. Thus, their claim that the trial court should have determined whether they were entitled to costs and attorney fees for their successful defense of Petitioners' claims is now moot.

### Facts and Procedural Posture

{3} This case presents relatively simple legal principles embedded in a relatively complicated factual setting. Petitioners are some of the limited partners in Valley View Investors, Ltd. (Valley View). Respondent Owens is the general partner of Valley View. When Valley View was initially formed in 1980, Joseph Milavec and Owens were the general partners of Valley View. However, Joseph Milavec died in 1995 and Cella Milavec inherited his partnership interest, but not his role as general partner. Thus, since 1995, Owens was the only general partner of the limited partnership. Petitioners, the

Fates and Cella Milavec, together hold roughly a 30% interest in Valley View. Owens owns slightly less than a 15% interest and the other limited partners collectively hold slightly less than a 56% interest.

{4} At the time this action was originally filed, Owens was also the sole general partner in two other limited partnerships: Re/Max Advantage, Ltd. (Re/Max) and Panoan Estates Limited Partnership (Panoan). Re/Max is a real estate brokerage limited partnership organized by Owens to carry on her real estate business.

{5} Owens' role as the general partner in Panoan is the primary concern in this lawsuit. Valley View was organized in 1980 to acquire and develop real estate in Los Lunas, New Mexico. In pursuit of this purpose, it acquired roughly 157 acres of land. Panoan was formed in 1989 for the purpose of acquiring and developing real estate in Los Lunas. Initially, Panoan's general partners were Owens, with a 25% interest, and Peter Naumberg, with a 25% interest. The limited partner was Peter H. Naumberg Ltd., with a 50% interest. In 1993, the interests in Panoan changed and Owens became the only general partner, with a 50% interest. The limited partners since 1993 are L.B. Partnership and Peter H. Naumberg Ltd., each with a 25% interest.

{6} The original petition alleged that in 1993, while acting for both Valley View and Panoan, Owens conveyed an option to purchase 41.1 acres of Valley View's land to Panoan. In general, Petitioners claim that the purchase price was less than fair market value, the terms of the option were overly favorable to Panoan and less than favorable to Valley View, and Owens did not tell the limited partners in Valley View that she had a significant interest in Panoan.

{7} After the original petition was filed, Owens, again acting on behalf of both Valley View and Panoan, entered into a second option agreement between Valley View and Panoan. In addition to granting Panoan the right to purchase certain acreage at certain prices, the 1995 option provided that 70% of the ownership interest in Valley View could consent to the replacement of the 1993 option with the 1995 option. At approximately the same time, the Valley View limited partners who, along with Owens, made up the 70% ownership interest in Valley View each filed an answer and disclaimer of interest. In these documents, these limited partners stated that they had an interest in Valley View, that they did not join the claims against Owens and therefore had no interest in the outcome of the lawsuit, and that each limited partner "consented to, authorized and ratified the actions taken by Defendants Owens and Re/Max which are the apparent basis for [Petitioners'] claims as set forth in the Petition and ... released and discharged Defendants Owens and Re/Max from any claims it may have individually or derivatively as the current holder or owner of a partnership interest in the [p]artnership."

{8} We need not address the details of the development of the pleadings. Instead, we explain the situation as it existed when the pleadings were refined to the satisfaction of the parties. At the same time that the original petition was filed, Petitioners filed a lis pendens against all the land that was still owned by Valley View. Ultimately, Petitioners named Owens, Re/Max, Valley View, the other limited partners of Valley View, and Panoan as Respondents. Owens, Re/Max, Valley View, and Panoan answered and counterclaimed against Petitioners and the lawyers who represented Petitioners when the lis pendens was filed. The counterclaims alleged that the filing of the lis pendens amounted to abuse of process, interference with contractual relationships, and prima facie tort. The counterclaims are still pending in district court.

{9} Once the pleadings assumed their final form, Petitioners, Owens, Re/Max, Panoan, and Valley View and the lawyers who were named in the counterclaim, filed motions for summary judgment. We will not discuss the various arguments that were ultimately rejected by the trial court. It is enough to note that Respondents argued, among other things, that the claims brought by Petitioners were derivative claims and that Petitioners had not complied with Rule 1–023.1 NMRA 2001. Petitioners argued, among other things, that their claims for accounting and dissolution were, by statute, direct claims

508

that they were asserting individually and not on behalf of the partnership. The trial court ultimately ruled that all the claims brought by Petitioners, including the claims for accounting and dissolution, sought damages for the decreased value of Petitioners' partnership interests, and as such, had to be brought as derivative claims. The court dismissed all claims against Respondents. The trial court expressly found that there was no just reason for delay and that judgment should be entered on the claims, thus certifying the order for an immediate appeal pursuant to Rule 1–054(B)(1) NMRA 2001. The court took Respondents' claims that they were entitled to their costs and attorney fees under advisement.

{10} Finally, we note that Owens, Valley View, Panoan, and Re/Max filed a joint answer brief. The brief does not make any distinctive arguments directed to the claims against Re/Max and Panoan. Thus, we do not express an opinion on the particular position of those limited partnerships in this litigation.

*Certification for Appeal Under Rule 1–054(B)(1)*

{11} Our calendar notice directed the parties to brief, in addition to other issues, the question of whether the trial court properly certified its order for appeal. In their briefs, both parties argue that the trial court properly certified its order for appeal under Rule 1–054(B)(1). We agree that the order was properly certified in this case.

{12} In *Khalsa v. Levinson*, 1998–NMCA–110, ¶¶ 19 20, 125 N.M. 680, 964 P.2d 844, this Court set out a two-part test for determining whether orders were properly certified for appeal: (1) the order must "finally determine[ ] at least one discrete claim;" and (2) the issues remaining to be tried, in this case the counterclaims, must not be so "intertwined, legally or factually," with the issues resolved by the order that the resolution of the issues still to be tried would "alter or revise the judgment previously entered." In this case, the trial court's order resolves all of Petitioners' claims against Respondents. The issues that are not resolved are the legally and factually discrete issues

concerning the filing of the lis pendens. Thus, the order was properly certified under Rule 1–054(B)(1).

*Standard of Review*

{13} We review whether the trial court was correct in its ruling that Petitioners' claims were derivative in nature and should have been brought under Rule 1–023.1. The parties do not agree upon the standard of review to be utilized in this case. Petitioners contend that we should review this case in the same manner as any other summary judgment case. Under that standard, we review the application of the law to the undisputed facts de novo. *See, e.g., Coates v. Wal–Mart Stores, Inc.*, 1999–NMSC–013, ¶ 21, 127 N.M. 47, 976 P.2d 999. Respondents, urge a review for an abuse of discretion, citing *Schwartzman v. Schwartzman Packing Co.*, 99 N.M. 436, 441, 659 P.2d 888, 893 (1983), in which our Supreme Court observed that "the trial court has wide discretion in interpreting whether a complaint states a derivative or primary claim." Despite the presence of this language, we view the question presented as a question of law.

{14} In *Schwartzman*, our Supreme Court held, as a matter of law, that shareholders could not bring an individual action to recover the property of the corporation or for injury to the corporation because the claims belonged to the corporation. *Id.* at 441, 659 P.2d at 893. The language relied upon by Respondents, much of which appears to be dicta, appears after the Court's holdings in the case. *Id.* Moreover, our Supreme Court recently treated the determination of the direct nature of the claim of aiding and abetting a breach of a fiduciary duty as a question of law. *GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 1997–NMSC–052, ¶¶ 7–13, 124 N.M. 186, 947 P.2d 143 (reviewing the question of whether the complaint stated a claim de novo); *see also Citizens Bank v. Williams*, 96 N.M. 373, 376, 630 P.2d 1228, 1231 (1981) (stating that even if we review for an abuse of discretion, an appellate court can correct "an erroneous application of the law"). Thus, we review the trial court's ruling de novo.

*Law Generally Applicable to This Appeal*

{15} Valley View was formed in 1980. At that time, partnerships were governed by an early version of the Uniform Partnership Act (UPA), NMSA 1978, §§ 54–1–1 to 54–1–43 (1947, effective until July 1, 1997) and the Uniform Limited Partnership Act (ULPA), NMSA 1978, §§ 54–2–1 to 54–2–30 (1947, as amended through 1988). Both laws have been substantially amended and thus statutory provisions cited or discussed in this opinion may not appear in current volumes of the statutes and may not apply to limited partnerships formed since those amendments. The parties agree that the provisions of the UPA in effect at the time Valley View was formed apply to limited partnerships, except to the extent that the provisions of the UPA are inconsistent with the provisions of the ULPA. Section 54–1–6(B) (1947). The ULPA also expressly provides that "[i]n any case not provided for in this act, ... the rules of law and equity, including the law merchant, shall govern." Section 54–2–29 (1947). Therefore, on issues not specifically addressed by the statutes, we apply the common law.

{16} In addition to the statutory provisions governing a partnership, the relationship of a partner to the partnership and to the other partners is a fiduciary relationship. *GCM, Inc.,* 1997–NMSC–052, ¶ 21, 124 N.M. 186, 947 P.2d 143; *Rogers v. Stacy,* 63 N.M. 317, 319, 318 P.2d 1116, 1117 (1957); *C.B. & T. Co. v. Hefner,* 98 N.M. 594, 601, 651 P.2d 1029, 1036 (Ct.App.1982). Similarly, the general partner in a limited partnership owes a fiduciary duty to the limited partners. *GCM, Inc.,* 1997–NMSC–052, ¶¶ 24–27, 124 N.M. 186, 947 P.2d 143; *see also Homestake Mining Co. v. Mid Continent Exploration Co.,* 282 F.2d 787, 799 (10th Cir.1960) (stating that under New Mexico's UPA and ULPA, a general partner in a limited partnership is accountable as a fiduciary to the other partners); *Lincoln Nat'l Life Ins. Co. v. Silver,* 966 F.Supp. 587, 619 (N.D.Ill.1995) (stating that under New Mexico law, a general partner in a limited partnership owes fiduciary duties to the partnership and the partners); *see also* § 54–1–21(A) (1947); § 54–2–29 (1947). As fiducia-

ries, partners are required to deal with each other openly, fairly, and honestly. *C.B. & T. Co.,* 98 N.M. at 601, 651 P.2d at 1036.

*Nature of Petitioners' Claims*

{17} The trial court ruled that all of Petitioners' claims were, in essence, claims for damages based on injuries to the partnership and the value of its interests, rather than claims based on injuries to the limited partners individually. We must review the propriety of the trial court's ruling that Petitioners' claims are derivative of a claim that belongs to the partnership and not direct claims asserted on behalf of Petitioners themselves.

{18} It is well settled in New Mexico that shareholders of a corporation may bring a derivative action on behalf of the corporation to assert a right belonging to the corporation or to redress a wrong done to it. *Marchman v. NCNB Tex. Nat'l Bank,* 120 N.M. 74, 81–83, 898 P.2d 709, 717–18 (1995). Similarly, our Supreme Court has stated the same principle in the context of a general partnership:

> [A] partnership is empowered to sue or to be sued in the name of the partnership, and a cause of action accruing to the partnership, for damages to partnership property or interests, belongs to the partnership rather than to individual partners. For these reasons, a partner cannot bring suit as an individual on a claim belonging to the partnership.

*First Nat'l Bank v. Sanchez,* 112 N.M. 317, 325, 815 P.2d 613, 621 (1991) (citations omitted). New Mexico has recently reiterated the principle that when an action is brought to enforce a right belonging to, or redress a wrong done to, a partnership, the action should be brought derivatively in the partnership's name. *GCM, Inc.,* 1997–NMSC–052, ¶¶ 19–20, 24–27, 124 N.M. 186, 947 P.2d 143 (stating that if a duty is owed to the partnership, then only the partnership can sue for a breach of such duty).

{19} Other jurisdictions have also recognized the derivative nature of proceedings brought on behalf of limited partnerships for wrongs committed against the partnership

entity. *See Allright Mo., Inc. v. Billeter,* 829 F.2d 631, 638 (8th Cir.1987) (applying Missouri law); *Klebanow v. New York Produce Exch.,* 344 F.2d 294, 298 (2d Cir.1965) (applying New York law); *Engl v. Berg,* 511 F.Supp. 1146, 1152–53 (E.D.Pa.1981); *Smith v. Bader,* 458 F.Supp. 1184, 1186–87 (S.D.N.Y.1978) (applying California law); *Moore v. 1600 Downing St., Ltd.,* 668 P.2d 16, 19 (Colo.Ct.App.1983); *Phillips v. KULA 200, Wick Realty, Inc.,* 2 Haw.App. 206, 629 P.2d 119, 122 (App.1981); *McCully v. Radack,* 27 Md.App. 350, 340 A.2d 374, 380 (1975); *Jaffe v. Harris,* 109 Mich.App. 786, 312 N.W.2d 381, 383–85 (1981); *Riviera Congress Assocs. v. Yassky,* 18 N.Y.2d 540, 277 N.Y.S.2d 386, 223 N.E.2d 876, 879 (1966); *Strain v. Seven Hills Assocs.,* 75 A.D.2d 360, 429 N.Y.S.2d 424, 426–30 (1980) (applying Ohio law); *see generally* Debra E. Wax, Annotation, *Right of Limited Partner to Maintain Derivative Action on Behalf of Partnership,* 26 A.L.R.4th 264 (1983).

{20} Derivative actions work effectively when the partnership has been damaged by a third party and the general partners refuse to enforce the partnership's rights. Bromberg and Ribstein have explained that:

> In a derivative suit[,] the plaintiff limited partner is typically acting against the wishes of those general partners who have decisionmaking authority for enforcement of the partnership right. The defendants are usually those general partners and others involved with them but may be only third parties.

4 Alan R. Bromberg & Larry E. Ribstein, *Partnership* § 15.05(a), at 15:46 (2000). Thus, a derivative action is a useful mechanism for limited partners to enforce partnership claims against third parties.

{21} When the action concerns a partner's grievance resulting from an internal dispute with other partners or the partnership, however, the traditional remedy is an accounting, an action that generally accrues at dissolution under the UPA Section 54–1–43 (1947). 2 Bromberg & Ribstein, *supra,* § 6.08(a), at 6:169 (stating that an accounting "has traditionally allowed for enforcement of rights and obligations between the partners");

§ 15.05(a), at 15:47 (explaining that an accounting or dissolution are possible causes of action "for limited partners to counter abuses by general partners").

{22} The recognition of derivative actions in the partnership context was fueled in part by the perceived inadequacy of the traditional remedies of accounting and dissolution. Actions for an accounting and dissolution can be "ineffective or inefficient and, in any event, do not reach nonpartners." *Id.* This is particularly true in the limited partnership context. As one commentator has remarked:

> The traditional remedy of dissolving the partnership is often meaningless because of its potentially severe tax consequences. Moreover, an action for an accounting of profits—the other traditional equitable remedy—is often ineffective in the face of ongoing abusive management.

Note, *Procedures and Remedies in Limited Partners' Suits for Breach of the General Partner's Fiduciary Duty,* 90 Harv. L.Rev. 763, 765 (1977) (*Procedures and Remedies*) (footnote omitted). In addition, a request for dissolution brings an end to the partnership's business, which in some cases may be undesirable. *Allright Mo., Inc.,* 829 F.2d at 636. However, even with the widespread availability of derivative suits brought on behalf of a partnership, partners can still bring suits on behalf of themselves as long as the suit seeks to assert claims and redress wrongs on behalf of the partner individually. *See GCM, Inc.,* 1997–NMSC–052, ¶ 19, 124 N.M. 186, 947 P.2d 143 (stating that only the proper party to a lawsuit is the real party in interest).

A. *Breach of Fiduciary Duty*

{23} A breach of fiduciary duty can be either individual or derivative, depending upon the nature of the duty and who suffers an injury. *Id.* ¶ 20. The distinction between the two is based on "whether the duty is deemed owed to the partners (as individuals) or to the partnership." *Id.* (internal quotes and citation omitted). The Court described this principle in the context of a claim for aiding and abetting a breach of fiduciary duty as follows:

[I]n order to constitute an individual claim, as opposed to a partnership claim, the breach [of fiduciary duty by the general partner] must cause an injury separate and distinct from an injury suffered by the partnership. Thus, a partner's individual action for aiding and abetting against a third party must be founded on a co-partner's failure to act primarily for the benefit of the partner bringing the action, arising out of matters connected with the partnership, and causing a direct injury to the partner rather than an indirect injury through the partnership.

*GCM, Inc.,* ¶ 23 (citation omitted). The Court also indicated that "[t]he nature of the relief requested and the breach of duty alleged are important indicators of the specific duty at issue." *Id.* ¶ 26. Bromberg and Ribstein agree that

> [t]he prevailing criterion [in ascertaining whether the claim is an individual or partnership claim] is whether the claimed injury is primarily to the partnership and only indirectly to the partners through their interest in the partnership—a partnership claim—or is direct or unique to the partner(s)—an individual claim.

4 Bromberg & Ribstein, *supra,* § 15.04(f), at 15:33 (footnotes omitted).

■■■ {24} We believe that Petitioners have asserted individual claims because they have claimed direct injury and have requested relief appropriate to their injury as individuals. They allege in their first amended petition that Owens breached her fiduciary duty to the limited partners by granting both the 1993 and the 1995 options. As to the 1993 option, Petitioners allege that Owens failed to inform the limited partners of her interest in Panoan, failed to obtain the consent of the limited partners to the transaction, and failed to fully inform the limited partners in advance of all the terms of the transaction, including the fact that Owens deeded ten acres to Panoan before Panoan made any payments and without requiring that Panoan execute a mortgage or otherwise provide security for the purchase price. As to the 1995 option, Petitioners raise similar claims and add a new claim—that the option specifically deprived Petitioners of their right

to consent or not to consent to the self-dealing.

■■■ {25} A partner, as a fiduciary, is required to fully disclose material facts and information relating to partnership affairs to the other partners, even if the other partners have not asked for the information. *Rogers,* 63 N.M. at 319, 318 P.2d at 1117 (discussing generally the fiduciary duty of disclosure); *C.B. & T. Co.,* 98 N.M. at 599–602, 651 P.2d at 1034–37 (holding that the managing partner breached his fiduciary duty to the heirs of a partner by failing to disclose to the heirs a valuable asset of the partnership that affected the price of the heirs' interest that the managing partner was buying); *Lincoln Nat'l Life Ins. Co.,* 966 F.Supp. at 619–20 (holding that the general partner of a venture capital limited partnership breached his fiduciary duty to the limited partners by failing to disclose that he owned stock in the corporations that were the recipients of funds from the partnership). The duty of disclosure "is a hallmark of a fiduciary relationship." 2 Bromberg & Ribstein, *supra,* § 6.06(a), at 6:90.

{26} Similarly, in the context of the fiduciary duty owed by a real estate broker to a listing property owner, our Supreme Court has held that the broker or agent breaches his fiduciary duty when he fails to tell the property owner that he has an interest in the entity that is purchasing the listed property. *Iriart v. Johnson,* 75 N.M. 745, 748–49, 411 P.2d 226, 227–28 (1965) (holding that real estate broker, who is in a fiduciary relationship with the owner of land listed with him, breaches his fiduciary duty to the landowner when he fails to disclose that he has purchased the land for himself and fails to disclose relevant facts that might indicate that the landowner should charge a higher price for the land); *Gelfand v. Horizon Corp.,* 675 F.2d 1108, 1110 (10th Cir.1982) (applying this principle when the agent's spouse had an interest in the corporation purchasing the property).

{27} The ULPA, Section 54–2–9(A) (1947), states that "[a] general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners."

The UPA, Section 54–1–21(A) (1947), specifically addresses a partner's duty of disclosure in relation to benefits derived from partnership transactions. Section 54–1–21(A) (1947) states that:

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

{28} This section imposes upon a partner the duty to disclose transactions through which the partner may derive benefits. It further provides other partners with a right to consent or withhold consent to transactions from which a partner stands to reap personal gains. Bromberg and Ribstein explain that "[t]he reference to 'the other partners' implies that consent to co-partner benefit must be approved unanimously by the partners. In limited partnerships this includes all the limited partners." 4 Bromberg & Ribstein, *supra*, § 16.07(h), at 16:132.

■ {29} Under Section 54–1–21(A) (1947) and Section 54–2–9(A) (1947), a limited partner has the right to consent, or to withhold consent to a self-serving transaction by a general partner. The partnership agreement in this case does not restrict this statutory right in any way. Thus, we rely upon the statutory description of the right and we agree with Bromberg and Ribstein that Section 54–1–21(A) (1947) implies unanimous consent which in turn gives every limited partner an individual right to consent. Because the right is individual, Petitioners can assert the abridgement of that right individually.

{30} In addition to their claim for breach of fiduciary duty, Petitioners also request an accounting and dissolution. Respondents contend that these claims are partnership claims that cannot be brought individually. Above, we concluded that Petitioners' breach of fiduciary claim can be considered individual because it involves their right to consent to self-interested general partner transactions. But, we must also decide whether the claims for accounting and dissolution are partnership claims that would preclude the bringing of the breach of fiduciary claim.

B. *Accounting and Dissolution*

■ {31} The ULPA, Section 54–2–10(A) (1947) gives Petitioners, as limited partners, a right to an accounting and to dissolution of the partnership. The statute reads in its entirety:

54–2–10. Rights of a limited partner.

A. A limited partner shall have the same rights as a general partner to:

(1) have the partnership books kept at the principal place of business of the partnership, and at all times to inspect and copy any of them;

(2) have on demand true and full information of all things affecting the partnership, and a formal account of partnership affairs whenever circumstances render it just and reasonable; and

(3) have dissolution and winding up by decree of court.

B. A limited partner shall have the right to receive a share of the profits or other compensation by way of income, and to the return of his contribution as provided in Sections 15 [54–2–15 NMSA 1978] and 16 [54–2–16 NMSA 1978].

{32} In *GCM, Inc.*, our Supreme Court characterized the right to accounting under the UPA as "providing to individual partners a right to a formal accounting based on [the UPA] or 'whenever other circumstances render it just and reasonable.'" *GCM, Inc.*, 1997–NMSC–052, ¶ 20, 124 N.M. 186, 947 P.2d 143; Section 54–1–22(D) (1947). Bromberg & Ribstein also indicate that a claim for an accounting can be either an individual or partnership claim and that a claim for dissolution is a direct rather than derivative claim. 4 Bromberg & Ribstein, *supra*, §§ 15.04(h), at 15:39 (accounting) & 15.04(f), at 15:33–15:35 (dissolution).

{33} Moreover, under New Mexico law, the traditional remedy for a breach of the fiduciary duty of good faith, which includes disclosure, is an action for accounting or for dissolution or both. *See GCM, Inc.*, 1997–NMSC–052, ¶ 21, 124 N.M. 186, 947 P.2d 143; *Levy v. Disharoon*, 106 N.M. 699, 702–04,

749 P.2d 84, 87–89 (1988) (stating that partner is accountable in an accounting proceeding for damages for fraud); *Willey v. Renner*, 8 N.M. 641, 646, 45 P. 1132, 1134 (1896) (holding that the remedy for an injured partner is action for accounting and dissolution; only then can the injured partner sue at law); *Sanchez v. Saylor*, 2000–NMCA–099, ¶ 32, 129 N.M. 742, 13 P.3d 960 (holding that an equitable action for an accounting and dissolution naturally included determination of the obligations of the partners to the partnership and to one another).

{34} Because the ULPA Section 54–2–10 grants limited partners the right to accounting and dissolution, Petitioners can bring those actions individually. As a result, by requesting the remedies of accounting and dissolution for assertions of individual injury, Petitioners have triggered the power of the court to entertain Petitioners' claims for damages for the breach of fiduciary claim as well.

{35} Respondents appear to argue that the language appearing in the UPA Section 54–1–21(A) (1947) which states that "[e]very partner must account to the partnership for any benefit," implies that the claims in this case are derivative rather than direct. If this case were only a tort action for damages, Respondents might have a point. But this lawsuit involves claims for an accounting and a dissolution, as well as tort damages. The presence of the remedies of accounting and dissolution affect the nature of the lawsuit. *Levy*, 106 N.M. at 704, 749 P.2d at 89 (recognizing that a partner cannot maintain an action at law against another partner for damages until there has been a final settlement of the affairs of the partnership, meaning an action for dissolution and accounting); *Willey*, 8 N.M. at 646, 45 P. at 1134 (stating that "one partner cannot maintain an action at law against another partner to recover an amount claimed by him by reason of partnership transactions until there has been a final settlement of the affairs of the partnership[,]" that is, a partner's primary remedy is to apply to a court of equity for dissolution and accounting before seeking damages at law); *Durham v. Southwest Developers Joint Venture*, 2000–NMCA–010, ¶¶ 31–32, 128

N.M. 648, 996 P.2d 911 (stating that an action for accounting is a prerequisite to initiating an action at law by a partner against the partnership or another partner).

{36} An action for an accounting is not an action at law; it is an action in equity. *Levy*, 106 N.M. at 704, 749 P.2d at 89 (stating that actions for accounting and settlement are actions in equity and not actions at law); 2 Bromberg & Ribstein, *supra*, § 6.08(d), at 6:199 (stating that an action for accounting is an equitable action). A partner must seek an accounting before bringing any actions at law which seek damages. *Durham*, 2000–NMCA–010, ¶¶ 31–32, 128 N.M. 648, 996 P.2d 911.

{37} Once a partner has sought an accounting in equity, a trial court may consider claims at law by one partner against another partner as part of the action for accounting. *GCM, Inc.*, 1997–NMSC–052, ¶ 21, 124 N.M. 186, 947 P.2d 143 (stating that the Supreme Court "has recognized the availability of damages for fraud by a partner against another partner in an equitable action for an accounting"); *Levy*, 106 N.M. at 704, 749 P.2d at 89 (stating that in an accounting proceeding, a partner charged with fraud and misconduct is accountable for damages); *see also Procedures and Remedies*, *supra*, at 777–85 (discussing individual actions by limited partners for dissolution or for an accounting and describing these actions as the "traditional remedy" for the breach of fiduciary duty by the general partner); 2 Bromberg & Ribstein, *supra*, § 6.08(d), at 6:195 (noting that because the action for accounting subjects all partnership actions to scrutiny, it can include "[q]uestions of fiduciary duties of the partners-for example, whether a partner must account for profits from an outside transaction or holds property in trust for the partnership"). We read nothing in the statute requiring Petitioners, as limited partners, to assert their statutory rights to accounting and dissolution derivatively.

*Defendants' Other Arguments*

{38} As an alternative ground for affirming the trial court's decision, Respondents argue that the challenged transactions

were authorized by law. Respondents advance various arguments to this effect. Initially, Respondents argue that the partnership agreement that created Valley View vests exclusive management in the general partners and does not address issues of self-dealing or conflict of interest. However, when the agreement does not address specific issues, statutory provisions control. *Durham*, 2000–NMCA–010, ¶ 18, 128 N.M. 648, 996 P.2d 911 ("The provisions of applicable statutes are part of every contractual commitment.").

{39} Respondents also point out that there is evidence in the record that the 1993 option and the 1995 option were ratified by roughly 70% of the partners in Valley View, if one includes the general partner, or 55% of the partners, if one does not include the general partner. But, the fact that Petitioners collectively constitute only 30% of the ownership interest is of no consequence because the claims are direct claims that belong to Petitioners and not the partnership. *See Levy*, 106 N.M. at 704, 749 P.2d at 89 ("In a partnership relationship, each partner has the right to have his co-partner exercise good faith in all partnership matters.").

{40} Respondents further argue that because Valley View was organized to sell real estate, among other things, the transactions challenged by Petitioners are simply transactions in the ordinary course of the business of Valley View that only require approval by a majority of the partners. *See* Section 54–1–18(H) (1947); *Covalt v. High*, 100 N.M. 700, 703, 675 P.2d 999, 1002 (Ct. App.1983). However, we believe that this argument ignores Section 54–1–21(A) (1947), discussed above, which requires the consent of all the partners for partnership transactions in which one partner may potentially obtain a benefit or profit not obtained by the other partners.

{41} We are equally unpersuaded by Respondents' policy arguments. Respondents contend that "[t]o impose a blanket prohibition of all so-called 'self-dealing' in the partnership context[,] regardless of fairness or only upon unanimous consent[,] would defy common sense." We disagree. The limited partnership form has significant advantages as an investment vehicle. However, as one commentator observed:

> Despite these advantages, the separation of capital from control and the disparity in knowledge and investment sophistication often existing between general and limited partners provide the general partners with substantial opportunities for taking advantage of the partnership and the limited partners through fraudulent self-dealing, waste, and mismanagement.

*Procedures and Remedies, supra*, at 763. Similarly, Bromberg and Ribstein have noted that the passive nature of the role of limited partners presents more opportunities and temptations for self-dealing or mismanagement than a general partnership. 4 Bromberg & Ribstein, *supra*, § 15.05(a), at 15:47. Nor do we consider Respondents' efforts to draw on the law concerning corporations persuasive in this context. As Bromberg and Ribstein recognize, the structure of a corporation includes significant checks and balances that do not exist in a limited partnership. *Id.* § 15.05(a), at 15:48.

{42} Under the law that applies to this case, when the general partner has an ownership interest in another entity that is a party to a proposed partnership transaction, the general partner is required to disclose the interest and the details of the transaction to the limited partners and to obtain the consent of all the limited partners to the transaction before entering into it. A limited partner who was not fully informed or who did not consent to the transaction may bring an individual action for accounting or dissolution or both and, in the context of that action, pursue the claim against the general partner and obtain a judgment for any damages caused by the breach of the general partner's fiduciary duty.

### Conclusion

{43} The trial court's order dismissing Petitioners' claims is reversed, and this matter is remanded to the trial court for further proceedings.

{44} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Judge, M. CHRISTINA ARMIJO, Judge.